J-A09019-21

2021 PA Super 111

| | | |
|---|---|---|
| E.C.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| M.C.S. | : | |
| | : | |
| Appellant | : | No. 1147 WDA 2020 |

Appeal from the Order Entered October 2, 2020
In the Court of Common Pleas of Butler County Civil Division at No(s):
F.C. No. 20-90090-C

BEFORE:   STABILE, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

OPINION BY KUNSELMAN, J.:                          **FILED: MAY 28, 2021**

M.C.S. (Father) appeals the consolidated order from the Butler County Court of Common Pleas, which denied his request for custody modification, but granted the request of E.C.-S. (Mother) to relocate to Somerset County with their 6-year-old daughter, L.E.S., and 7-year-old son, M.R.S. (the Children).  Father claims, **inter alia**, the trial court erred when it declined to interview the Children to obtain their preferences, pursuant to Pa.R.C.P. 1915.11 and the Child Custody Act.  **See** 23 Pa.C.S.A. § 5328(a)(7); § 5337(h)(4).  After careful review, we agree and vacate the order with instructions.

The relevant factual and procedural history is as follows.  The parties married in 2003, and the Children were born in 2012 and 2014.  During their

_____

[*] Retired Senior Judge assigned to the Superior Court.

marriage, the parties relocated several times as they pursued various education and employment opportunities. In spring 2017, the family resided in Montgomery County. Following allegations of Father's marital misconduct, the parties separated and eventually divorced. In June 2017, the parties agreed to a custody arrangement; they shared legal custody, while Mother received primary physical custody, subject to Father's partial physical custody, which he exercised every other weekend and for two non-consecutive weeks of summer vacation.

Thereafter, Mother and the Children moved across the Commonwealth to Cranberry Township, Butler County. Father eventually moved to Harrisburg for employment as a news producer. Although Father lived four hours from the Children, he exercised his regular custody time. In April 2018, Father took a job as a news producer in Cleveland, Ohio. The position was out of state, but Father said he accepted the job because it was substantially closer to the Children (the driving distance was reduced from four hours to two).

In February 2020, Mother filed a notice of proposed relocation. She sought to move with the Children from Butler County to Somerset County to live with her fiancé. Mother proposed keeping the primary/partial custody arrangement the same, but she offered to do the extra driving so Father would not be inconvenienced. Meanwhile, with the arrival of the Covid-19 pandemic, Father's employer allowed him to work remotely. In April 2020, Father moved from Cleveland to Cranberry Township. In addition to objecting to Mother's

relocation, Father filed a cross-petition for modification, seeking shared physical custody.

Father maintained he had been trying to live near the Children for years, as demonstrated by his continued efforts to obtain employment closer to them, and that his efforts were only impeded by the finite job opportunities available in local television markets. Father also averred he was under contract to work in Cleveland until May 2020, but that he did not renew his contract so he could live in Cranberry permanently.

The trial court scheduled a consolidated hearing on the modification and relocation petitions for July 2020. Father's counsel served a subpoena upon Mother, requesting that she make the 7-year-old, M.R.S., available for an interview with the court so that the Child could give his preferences. *See* 23 Pa.C.S.A. § 5328(a)(7); *see also* 23 Pa.C.S.A. § 5337(h)(4). Prior to the hearing, Father's counsel motioned for an emergency continuance due to a Covid-related matter. Counsel specifically requested the court not to reschedule the hearing for certain August dates, because Father would be on vacation with the Children. The court granted the continuance and rescheduled the consolidated hearing for September 9, 2020, after Father's vacation. Although the court did not formally quash the subpoena, it struck

from the proposed order the provision mandating the attendance of M.R.S. *See* Order of Court, 7/27/20.[1]

Following the consolidated hearing, the court denied Father's petition for modification and granted Mother's petition for relocation. *See* Order of Court, 10/3/20. The court delineated its reasons for the decision from the bench and issued additional findings contemporaneously with its custody order. *See* Order of Court, 9/30/20. Notably, the court delineated its reasons only for the relocation decision under Section 5337(h)(1)-(10) of the Child Custody Act, and the court did not consider the Children's preferences due to their age.

Father timely filed this appeal. He presents the following issues, which we reorder for ease of disposition:

> 1. Whether the trial court erred as a matter of law and abused its discretion by failing to take testimony relative to the well-reasoned preferences of the Children, specifically M.R.S.?
>
> 2. Whether the trial court erred as a matter of law and abused its discretion in finding that Mother's proposed relocation would not likely affect Father's relationship with the Children in light of Father's petition to modify custody filed shortly thereafter Mother's notice of proposed relocation?
>
> 3. Whether the trial court erred as a matter of law and abused its discretion in finding that Father had ample opportunity to relocate to Cranberry Township, Pennsylvania prior to Mother's proposed relocation

---

[1] At oral argument before this panel, Mother's counsel indicated that, during the presentation of the emergency motion, Mother opposed having the trial court interview the Children.

with the record testimony not supporting such a finding?

Father's Brief at 8 (capitalization adjusted).[2]

We begin by observing the relevant law governing this case. The Child Custody Act contains two sets of factors the courts must consider, depending on the type of action. *See* 23 Pa.C.S.A. § 5328(a)(1)-(16); *see also* 23 Pa.C.S.A. § 5337(h). Section 5328(a) provides: "In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including [factors 1 through 16.]" *Id.* We have held the court must conduct a Section 5328(a) analysis when a party seeks to modify the type of custody award. *See A.V. v. S.T.*, 87 A.3d 818, 824 n.4 (Pa. Super. 2014); *see also* 23 Pa.C.S.A. § 5338 ("Modification of existing order."); *and see* 23 Pa.C.S.A. § 5323(a) ("Award of custody."). Although, when a party merely seeks modification of "a discrete custody-related issue" a comprehensive Section 5328(a) analysis is not always necessary. *See M.O. v. J.T.R.*, 85 A.3d 1058, 1063 (Pa. Super. 2014).

Separately, Section 5337(h) enumerates ten factors a court must consider in determining whether to grant a proposed relocation, again giving weighted consideration to those factors which affect safety. In cases like the

_____

[2] Father withdrew the of question of "[w]hether the trial court erred as a matter of law and [abused] its discretion in finding that [Father] agreed for [Mother] to relocate to Cranberry Township, PA upon the parties' initial separation with record testimony not supporting such a finding." *See* Father's Brief at 16.

- 5 -

instant matter, where one party proposed relocation while the other sought custody modification, we have held courts must consider **both** sets of custody factors. **See E.D. v. M.P.**, 33 A.3d 73, 82 (Pa. Super. 2011). Similarly, when a proposed relocation necessarily involves the modification of the parties' custody, courts must consider both sets of factors. **A.V.**, 87 A.3d at 824-824; **see also D.K. v. S.P.K.**, 102 A.3d 467, 476-477 (Pa. Super. 2014) (acknowledging several factors directly or implicitly overlap). Section 5328(a)(7) and Section 5337(h)(4) are virtually identical; both require the court to consider the preference of the child. Finally, a trial court must delineate the reasons for its decision, either on the record in open court or in a written opinion or order, pursuant to 23 Pa.C.S.A. § 5323(d).

Here, the trial court necessarily had to consider the Section 5328(a) factors, because Father sought to change his award from partial to shared physical custody – as opposed to simply seeking to modify a discrete custody-related issue. Moreover, the court also had to consider the Section 5337(h) factors to adjudicate Mother's request to relocate with the Children. And finally, the court had to delineate its reasons as to both decisions.

In his first issue, Father notes the court failed to consider all the relevant Section 5328(a) factors before denying his petition for modification. **See** Father's Brief at 12, 14. But Father narrows his appeal to one specific aspect. He argues the court erred when it decided not to interview the Children – especially the nearly-8-year-old M.R.S. – in order to ascertain the Children's well-reasoned preference, as mandated by Section 5328(a)(7). **See id.** at

15. Father contends that the court's decision not to conduct interviews of the Children also rendered the court's relocation decision erroneous for the same reason. *See id.* at 12; *see also* Section 5337(h)(4). Thus, Father challenges both decisions: the denial of his modification petition, and the grant of Mother's petition to relocate.

But before we reach the merits of this claim, we must determine whether Father properly preserved the issue for our review. Mother argues this issue was waived due to Father's failure to object during the hearing. Mother directs our attention to the end of the hearing when the court asked Father if there was anything else, and Father responded that he had no other witnesses. *See* Mother's Brief at 8-9; *see also* N.T., 9/9/20, at 278.

Father concedes he did not object at the hearing, but he claims the issue was preserved by virtue of his objection during the presentation of his emergency motion for a continuance. There, following oral arguments, the court struck from Father's proposed continuance order his specific request that M.R.S. attend the hearing. Father argues the court's removal of this provision effectively quashed his subpoena of M.R.S.

Perhaps it would have been prudent of Father to make another formal objection at the hearing to ensure the issue was preserved; typically, the failure to do so constitutes waiver. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Here, however, during the presentation of Father's motion for a continuance, the court decided to preclude both Children from testifying. That

is, the court ruled to exclude evidence. In such instances, our Rules of Evidence provide, "[o]nce the court rules definitively on the record – **either before or at a trial** – a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Pa.R.E. 103(b) (emphasis added). We conclude Father preserved the question of whether the court erred when it declined to interview the Children to obtain their preferences. We turn now to the merits of that issue.

The trial court defended its decision to forgo interviews, reasoning that Pennsylvania Rule of Civil Procedure 1915.11 does not mandate courts interview children in custody matters, and that such decisions are discretionary. **See** Trial Court Opinion (T.C.O.), 12/7/20, at 2-3. The court opined it chose not to conduct interviews, because they would cause the Children to experience stress and confusion due to their ages. Mother concurs with this conclusion.

Because Father claims, in part, that the court's application of Rule 1915.11 constituted a legal error, we identify the appropriate scope and standard of review:

> The interpretation and application of a statute is a question of law that compels plenary review to determine whether the trial court committed an error of law. As with all questions of law, the appellate standard of review is *de novo* and the appellate scope of review is plenary.

**B.K.M. v. J.A.M.**, 50 A.3d 168, 172 (Pa. Super. 2012) (citations omitted).

Rule 1915.11 ("Appointment of Attorney for Child. Interview of Child. Attendance of Child at Hearing or Conference.") provides in relevant part:

> (b) The court **may** interview a child, whether or not the child is the subject of the action, in open court or in chambers. […]
>
> (c) Unless otherwise directed by the court, the child who is the subject of the action shall **not be required** to attend a hearing before the court or a conference.
>
> *Note:* A party may bring a child to a conference or hearing but, in the absence of an order of court, is not required to do so.

Pa.R.C.P. 1915.11(b)-(c) (emphasis added).

The Comment to this Rule makes its purpose explicit:

> [T]he presence of a child in court is not always necessary or desirable. The experience may be traumatic and disruptive. Consequently, the child should not be required to attend a hearing or conference in every case. When the presence of a child is required and the custodial party does not voluntarily bring the child, the court may issue an order for the child's attendance.

**See** Domestic Relations Committee Explanatory Comment to Pa.R.C.P. 1915.11 (1991).

Application of this Rule has been the source of increasing litigation in recent years. In order to fully address the merits of Father's claim, we must first clarify the standard by which we review a trial court determination made pursuant to Rule 1915.11.

The most relevant of our recent decisions is **T.D. v. E.D.**, 194 A.3d 1119 (Pa. Super. 2018). In **T.D.**, the father argued the trial court erred when it did

- 9 -

not interview his 8-year-old child to obtain the child's preference under Section 5328(a)(7). The underlying issue in that case was the logistics of the parties' custody exchange – whether the child should be permitted to fly unaccompanied between the father's home in Boston and the mother's home in Philadelphia. The trial court chose not to interview the child, assuming instead – based on the parents' testimony – that child would prefer to fly unaccompanied. Thereafter, the court assigned this presumed preference little weight and concluded that the child was not old enough to fly unaccompanied for safety reasons (*e.g.*, what happens if the plane needed to be diverted to another airport). *T.D.*, 194 A.3d at 1125-1126. On appeal, the father's argument was that, if only the trial court had seen the child and heard his preference during an interview, the court's safety concerns would have been allayed. We concluded the court did not abuse its discretion. *Id.* at 1127.

In reaching this conclusion, we observed the trial court's rationale underlying its decision to forgo the child interview; the trial court held that "[t]he plain language of Rule 1915.11 makes interviewing a child in a custody proceeding *optional*." *Id.* at 1126 (quoting the trial court's Rule 1925(a) opinion) (emphasis original). However, this was not *our* holding, and any reference to trial court's rationale must be viewed in the context of our prior precedent, *Bovard v. Baker*, 775 A.2d 835, 840 (Pa. Super. 2001).

In *Bovard*, we concluded that the trial court's decision not to interview the children *was* an abuse of discretion. We first explained, while a child's

preference is not controlling, the preference does "constitute an important factor that must be carefully considered" in determining the child's best interests. *Id.* (citing *McMillen v. McMillen*, 602 A.3d 845, 847 (Pa. 1992)). We opined, "[g]iven the trial court's conclusion in this case that both parents were equally loving and capable…the custodial preferences of the children may 'tip the evidentiary scale' in favor of one parent or the other." *Bovard*, 775 A.2d at 841. We ultimately held the "court abused its discretion by concluding that interviews with or testimony from the children was unnecessary." *Id.*

In deciding *T.D.*, we noted that trial court explicitly distinguished its facts from those in *Bovard*:

> [T]he issue [in *T.D.*] was not whether the child preferred to live with a particular parent, nor did the issue here involve a ruling that would materially alter the current custody arrangement. On the contrary, the court here decided a discrete and narrow issue[,unaccompanied air travel, which was] ancillary to an otherwise-undisputed custody arrangement pertaining to a single eight-year-old child.

*T.D.*, 194 A.3d at 1126-1127 (quoting the trial court's Rule 1925(a) opinion).

We approved of this distinction and agreed that the court's decision was not unreasonable "in light of the *narrow scope of the issue*." *Id.* at 1126 (emphasis added). By noting the narrow scope of the issue and the trial court's distinction from *Bovard*, we implicitly acknowledged "[i]t is beyond the power of a Superior Court panel to overrule a prior decision of the Superior Court, except in circumstances where intervening authority by our Supreme Court calls into question a previous decision of this Court." *Commonwealth*

- 11 -

*v. Summers*, 245 A.3d 696, 700 (Pa. Super. 2021) (citations omitted). Thus, notwithstanding our reference to the trial court's use of the term "optional" to describe the court's flexibility to conduct interviews, *T.D.* does not stand for the proposition that Rule 1915.11 provides a court *carte blanche* to decide whether to interview the child. Rather, this Court held the trial court must have "ample reasons for its decision not to interview the child." *See T.D.*, 194 A.3d at 1126 (citation omitted).

Since we decided *T.D.*, there have been other instances where the court properly declined to interview the child. Although none have binding authority, all have persuasive value.[3] *See, e.g., A.M. v. J.L.H.*, -- A.3d. --, 2021 WL 929954 (Pa. Super. 2021) (non-precedential decision) (holding that an interview was unnecessary where the purpose of the hearing was to determine whether the mother's boyfriend could be present during the mother's custody time, where the child had not seen the boyfriend in years, and where there was no reason to believe that the child would know whether the boyfriend remained sober or posed a safety risk.); *see also K.L.C.S. v. D.W.S.*, 245 A.3d 1071 (Table), 2020 WL 7353815 (Pa. Super. 2020) (non-precedential decision) (holding that the mother did not submit an offer of proof of what relevant testimony she expected to elicit from the interview, or how

---

[3] Pursuant to 210 Pa. Code. § 65.37 (Non-Precedential Decisions (formerly titled Unpublished Memoranda Decisions), non-precedential decisions filed *after* May 1, 2019, may be cited for their persuasive value. *See also* Pa.R.A.P. 126(b).

the testimony would be germane to the matters before the court, nor did either parent ask for a child interview.); *and see E.H. v. Y.R.*, 241 A.3d 430 (Table), 2020 WL 6106650 (Pa. Super. 2020) (non-precedential decision) (holding that the court did not err when it declined the interview, where neither party requested the court interview the children to better discern their preferences.).[4]

Therefore, we clarify that, while Rule 1915.11 provides the trial court with the option of whether to interview the child, its decision is still subject to our review for an abuse of discretion. Although the presence of a child "is not always necessary" and while "the child should not be required to attend a hearing…in every case," *see* Comment to Rule 1915.11, it follows that there are some instances where the court's failure to interview the child constitutes an abuse of discretion. *See also Bovard*, *supra*.

Upon our review of the relevant precedents and persuasive authorities, it is apparent the court will not abuse its discretion when it forgoes a child interview, in cases involving only a narrow or discrete, custody-related issue,

_____

[4] The trial court relied on *M.D. v. A.D.*, -- PA. Super. --, 2018 WL 4346821 (Pa. Super. 2018) (non-precedential decision). This case holds neither binding authority, nor persuasive value. Even if *M.D.* had value, we would note first that the child interview issue was waived and the merits were never reached. To the extent we would contemplate the *dicta*, we would note further that *M.D.* involved domestic violence and alcohol abuse, which made the court to determine that an interview would cause the child undue stress; and even then, the court still ascertained the child's preference *via* hearsay statements made to the expert custody evaluator, who testified at the hearing. *M.D.* at *5.

as opposed to a material change in the custody award. *See T.D.*, 194 A.3d at 1126-1127 (relating to unaccompanied travel); *see also A.M., supra* (relating to the presence of the mother's boyfriend during her custody time). After all, when the trial court resolves a "discrete, custody-related issue," we have held that a complete Section 5328(a) analysis is not always necessary. *See M.O.*, 85 A.3d at 1063. Similarly, we have found discretion is not abused when neither party seeks an interview. *See K.L.C.S.*, *supra; and see E.H.*, *supra*.

Conversely, when a party explicitly requests the interview, in a case involving a substantive custody award or a material change from the custody arrangement, the court runs the risk of abusing its discretion when it declines to interview the child. *See Bovard, supra*. But even in such cases, courts may decline the interview if there are ample reasons why the experience would be traumatic or disruptive to the child. *See* Comment to Rule 1915.11; *see also T.D.*, 194 A.3d at 1126.

In reaching such a conclusion, we are cognizant of our role as an error-correcting court and that "[i]t is not the prerogative of an intermediate appellate court to enunciate new precepts of law or to expand legal doctrines." *Matter of M.P.*, 204 A.3d 976, 986 (Pa. Super. 2019). Rather, "we are obliged to apply the decisional case law as determined by the Supreme Court of Pennsylvania." *Id.* Absent further guidance from our Supreme Court or an *en banc* panel of this Court, we must construe *T.D.* to be in line with *Bovard*.

Having clarified that a court's decision to decline a child interview, over objection, is subject to appellate review for abuse of discretion, we may now decide whether discretion was abused in this case. To do so, we start by acknowledging the pertinent scope and standard of review:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

**S.T. V. R.W.**, 912 A.3d 1155, 1160 (Pa. Super. 2018) (citation omitted).

With the appropriate standard in mind, we note the court's broad rationale for rejecting Father's request that the court interview the Children. Relying on Pa.R.C.P. 1915.11, the trial court explained:

> In this case, the undue stress of the Children would suffer by being interviewed by the court was not outweighed by the persuasiveness of their potential testimony. While the well-reasoned preference of the child is one of the sixteen custody factors, it is not the only factor. It was an irrelevant factor in this case due to the Children's young ages and their presumed inability to make a well-reasoned preference. The evidence on the record from the adult witnesses who testified support the court's decision. There was no legitimate evidentiary reason to subject these Children, ages 6 and 7, to an interview in chambers. Any testimony

- 15 -

> from the Children would have caused undue stress and confusion due to their young ages and would not have impacted the decision of this court. Interviewing the Children in this case was not in their best interest, which is why the court used its discretion by not interviewing them.

Trial Court Opinion (T.C.O.), 12/7/20, at 3 (capitalization adjusted).

The court's explanation included several reasons for not interviewing the Children. The court determined: 1) that the potential testimony would have been irrelevant; 2) that, due to their age, the Children's preferences would not have impacted its decision; 3) that the Children would have been unable to articulate a preference; and 4) that Children would experience stress and confusion if they were interviewed. We discuss each reason in turn.

First, the court concluded the Children's preferences were "irrelevant" due to their age, and opined "[t]here was no legitimate evidentiary reason to subject these Children…to an interview in chambers." **See** T.C.O., at 3; **see also** Findings of Fact and Discussion, 9/30/20, at 13 ("Due to the Children's age and maturity, the court did not consider a preference, if any, of the Children."). However, the Child Custody Act makes clear such a preference is *per se* relevant to the substantive questions of custody and relocation. **See** 23 Pa.C.S.A. § 5328(a)(7) ("[T]he court shall determine the best interest of the child by considering **all relevant factors**, **including**…[(a)(7)].") (emphasis added); **see also** 23 Pa.C.S.A. § 5337(h)(4) ("In determining whether to grant a proposed relocation, the court **shall consider** the following factors…[(h)(4)]) (emphasis added).

As we discussed above, there are instances where a child's testimony is not relevant, but those cases concern ancillary issues. In **T.D.**, **supra**, the child's potential testimony on preference was largely irrelevant to whether unaccompanied air travel was safe for an 8-year-old; and the air travel issue was a discrete, custody-related issue. Likewise, in **A.M.**, **supra** the potential testimony concerned the custody-related issue of mother's boyfriend. The proffered testimony of those respective children had little to do with a preferred, substantive custody award.

By comparison, the instant matter involved two substantive custody decisions: whether to increase the amount of custody time with Father; and whether to grant Mother's request to relocate. Even young children are able to express their likes, dislikes, apprehensions, and other relevant information insofar as it relates to custody and relocation; *i.e.*, whether they like their school and their routines, whether they have friends, or partake in extracurricular or community activities – or in this case, whether they have enjoyed having Father live close by for nearly the first time in their memory.

We have recognized, "[p]lacing a child in a position of feeling like he or she has to choose or opine even a discrete custody matter could aggravate relationships to the detriment of the child's best interests." **T.D.**, 194 A.3d at 1126 (quoting the trial court's Rule 1925(a) opinion). Yet, the courts should not discount the ways in which an interview of even a young child might be beneficial. The interview is an opportunity for the court to learn what, in the child's view, is the most important aspect of the custody award. Courts have

- 17 -

also used their interactions with the child to promote understanding among the parties, thereby reducing the temperature of the litigation. And, as we stated above, the child's preference could "tip the evidentiary scale" of the entire decision. ***Bovard***, 775 A.2d at 841. Here, Father recognizes the Children's preferences might not alter the court's ultimate modification and relocation decisions; nevertheless, he believed their preferences could be dispositive. The court must not reflexively foreclose that possibility.

The trial court's second reason for declining to interview the Children was that their potential preferences "would not impact its decision." ***See*** T.C.O. at 3. The court presumed that, whatever the Children's preferences, they would not be persuasive. In effect, the court prejudged the weight of the evidence, without first ascertaining what the evidence was. To be sure, even before a child's preference is considered next to the litany of the other factors, the preference is first couched by the child's own level of maturity. ***See*** 23 Pa.C.S.A. § 5328(a)(7) ("The ***well-reasoned*** preference of the child, based on the child's ***maturity and judgment***.") (emphasis added); ***see also*** 23 Pa.C.S.A. § 5337(h)(4) ("The child's preference, taking into consideration the ***age and maturity*** of the child.") (emphasis added). Still, the court must first ascertain what the preference is, prior to placing the child's preference into the context of the child's age and reasoning.[5]

---

[5] Mother argues that we must defer to the trial court on weight issues, in adherence to our abuse of discretion standard. ***See*** Mother's Brief at 7. While
*(Footnote Continued Next Page)*

The third reason the court found the interviews unnecessary was the Children's "presumed inability to make a well-reasoned preference." ***See*** T.C.O. at 3. Indeed, some children, due to their young age or other reason, might be unable to express themselves or to understand the duty to tell the truth. In these cases, the children would not be competent witnesses. ***See*** Pa.R.E. 601(b)(2), (4). However, the trial court never inquired whether these Children would be incompetent.[6]

The final reason the court advanced was that interviews would cause the Children to experience undue stress and confusion. ***See*** T.C.O. at 3. As the Explanatory Comment to Rule 1915.11 makes clear, courts should consider whether an interview might be "traumatic and disruptive" when determining whether the interview is "necessary or desirable." For this reason, the "traditional rules of evidence have also been relaxed to some

---

we defer to the trial courts on such issues, we do so when the "trial judge who viewed and assessed the witnesses first-hand." ***S.T. V. R.W.***, 912 A.3d at 1160. Here, however, the trial court never viewed the Children at all.

[6] We also find instructive our Supreme Court's decisions concerning children's preferences in cases involving the termination of parental rights pursuant to the Adoption Act. ***See*** 23 Pa.C.S.A. §§ 2101-2938. That context concerns whether a conflict exists between the child's preferred outcome and the child's best interests. ***See In re Adoption of L.B.M.***, 161 A.3d 172, 180 (Pa. 2017) (concerning the appointment of counsel under 23 Pa.C.S.A. § 2313(a)). The High Court declined to impose an age presumption to resolve the question of how young is too young to have a preferred outcome. Instead, the Court held that if the child was able to verbalize a preference, that child's preference had to be given legal effect. ***See In re T.S.***, 192 A.3d 1080, 1092-1093 (Pa. 2018). That issue is different from the instant question of whether the child is competent to testify during an interview. Still, it is helpful to recognize that elsewhere in the law, the preference of even a very young child is considered.

extent in custody matters […].” Comment to Pa.R.E. 101. (“Scope; Adoption and Citation.) (discussing the court interrogation of a child under Pa.R.C.P. 1915.11(b)).

Thus, a child's preference might be elicited another way, *e.g.*, through stipulated hearsay statements or the parties' averments. There are still other mechanisms, both formal and informal, to alleviate the "traumatic and disruptive" nature of court attendance without having to sacrifice the child's preference. The trial judge could conduct the interview without wearing the judge's robe or schedule the interview in chambers or at the end of the day, which ensures the child is out of school and that the courthouse has less traffic. Rule 1915.11(a) also authorizes the court to appoint *sua sponte* an attorney to represent the child's interests. Rule 1915.11-2 authorizes the court to appoint *sua sponte* a guardian *ad litem***.**

We understand the court's concern for the Children. And we acknowledge there are situations when a child's testimony is unnecessary in relation to the narrowness of the issue or otherwise disfavored due to the harrowing nature of the case. We will not disturb a court's decision to forgo the interview, upon ample reasons supporting that decision. Here, however, the court conducted no inquiry as to whether or why these Children would face trauma if they were asked to testify, other than noting the Children's ages. Without more, and over the objection of a parent, we conclude the court's decision to forgo the interviews, based solely on these Children's ages, constituted an abuse of discretion.

In sum, the trial court's conclusions were unreasonable as shown by the dearth of evidence of record. None of the reasons offered by the trial court justifies its decision to forgo interviewing the Children, over Father's objection, in this case. The potential testimony would have been relevant to the court's substantive custody decisions. The record does not indicate the Children's ages would have rendered them incompetent witnesses. Nor does the record indicate reasons how or why the Children would have experienced trauma. Having clarified that we review determinations about whether to conduct a child interview for an abuse of discretion, we conclude the court did so abuse its discretion here.

We vacate the order denying modification and granting relocation and remand for further proceedings. We instruct the trial court to conduct a full analysis of the Section 5328(a) factors, including the preferences of the Children under Section 5328(a)(7), before reaching a decision on Father's petition for modification. Similarly, we instruct the court to consider the preferences of the Children under Section 5337(h)(4) before reaching a decision on Mother's proposed relocation. The court shall supplement the record by conducting an evidentiary hearing to ascertain the Children's preferences, in some fashion. If the court is still disinclined to interview the Children in order to obtain their preferences, based upon the belief that an interview would be traumatic or disruptive, the court shall inquire into the reasons why these Children would experience trauma, apart from their age alone, and ensure its findings are made part of the record.

In light of this disposition, we decline to address Fathers remaining issues.

Order vacated. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  5/28/2021