**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| HASSAN H. AMHAZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LAUREN L. SHUTTLESWORTH | : | No. 1152 MDA 2021 |

Appeal from the Order Entered July 30, 2021,
in the Court of Common Pleas of Dauphin County,
Civil Division at No(s):  2018-CV-06517-CU.

BEFORE:   OLSON, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:          **FILED: MAY 2, 2022**

In this custody matter, Appellant Hassan Amhaz (Father) appeals the denial of his request to change the elementary school of his six-year-old daughter, A.A. (the Child).  When Father petitioned to modify the custody arrangement that he previously entered into with Appellee, Lauren Shuttlesworth (Mother), Father also sought to enroll the Child in a private school that emphasized "STEM" (science, technology, engineering, math) education.  At the hearing, the parties settled the physical custody aspect of their case; the only question left for the trial court to resolve was the choice of school.  The court agreed with Mother that it was in the Child's best interest to remain in her current school.  After review, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

The relevant background is as follows:  The Child was born in August 2014, and the parties separated in March 2017.  At the time of separation, Mother retained primary physical custody, because of Father's work schedule.  Father is an anesthesiologist, who regularly traveled to South Carolina for work while keeping a residence in Pennsylvania.  In November 2018, the parties entered into a consent order, whereby Father received 10 days of partial custody per month and 2 weeks of summer vacation; the parties agreed to share legal custody. *See* Consent Order of Court, 11/27/18.

Litigation resumed in October 2020, when Father filed a petition to modify the physical custody arrangement.  Father obtained new employment with a hospital in Harrisburg, Pennsylvania, which allowed him to exercise significantly more custody with the Child.  The parties agreed to an interim order in December 2020, which provided Father with shared custody on a week-on-week-off basis.  Although Mother consented to the interim order, she still disagreed that Father should have shared physical custody.  The matter proceeded to a final custody hearing.  A few weeks prior to the hearing, Father filed an addendum to his modification petition, wherein he requested the ability to enroll the Child in a private elementary school (hereinafter "St. Joan of Arc School").  The Child had been attending public elementary school in the Palmyra Area School District, where the parties originally agreed to send the Child.

The trial court held the final custody hearing on June 21, 2021.  After the testimony of the Child's therapist, the parties met with the court in

- 2 -

chambers and settled their physical custody dispute – namely, that the interim shared custody arrangement would become permanent. *See* N.T., 6/21/21 at 31. The only outstanding issue for the trial court to decide was where the Child would attend elementary school. Father's primary argument was the St. Joan of Arc School offered a superior education; Mother argued that the Child should remain in the elementary school affiliated with the Palmyra Area School District, where the Child had developed both socially and academically. Ultimately, the court was unpersuaded by Father's argument and evidence, and it denied his request to enroll the Child in St. Joan of Arc School. *See* Opinion and Order of Court, 7/30/21. Father timely filed this appeal and presents six issues for our review:

1. Did the trial court commit an error of law and abuse of discretion by failing to consider the totality of the documentation and testimony of Father regarding the benefits of the Child attending St. Joan of Arc School compared to the documentation and testimony of Mother?

2. Did the trial court commit an error of law and abuse of discretion by failing to properly consider the documentation and testimony of Father regarding the educational and enrichment opportunities available to the Child compared to those available in the Palmyra Area School District?

3. Did the trial court commit an error of law and abuse of discretion by failing to properly consider the factor of the geographical distance between the schools and the parent's homes as it relates to their shared physical custody and work schedules, specifically that St. Joan of Arc is equidistant between the parties' residences as opposed to Palmyra Area School District which is much farther from Father's home than Mother's home. Further, the documentary evidence

was submitted by Father that excessive traveling between school and home is detrimental to the Child's wellbeing?

4. Did the trial court commit an error of law and [abuse] of discretion by concluding that remaining in the Palmyra Area School District would give her stability when the evidence of records shows she had successfully transitioned three times from U-Grow for pre-school, to Lingle Elementary for kindergarten to Forge Elementary for first grade in the past?

5. Did the trial court commit an error of law and abuse of discretion by disregarding the testimony and documentary evidence submitted by Father regarding the quality and value of the STEM program in the regular academic curriculum of St. Joan of Arc School where she attended in the summer and greatly enjoyed?

6. Did the [trial] court err and abuse [its] discretion by ignoring the evidence of record and concluding that Mother was objecting to indoctrination of a religion at St. Joan of Arc School when there is no evidence that the school indoctrinates the children but rather offers religious classes? Further, fifty percent of the students are non-Catholic?

Father's Brief at 6-7 (capitalization adjusted, superfluous words omitted).

We begin our analysis by acknowledging the pertinent scope and standard of review:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the

- 4 -

> evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

**S.T. v. R.W.**, 192 A.3d 1155, 1160 (Pa. Super. 2018) (citation omitted).

Insofar as Father presents a question of law, however, we note that our scope and standard of review changes. As with all questions of law, the appellate standard of review is *de novo* and the appellate scope of review is plenary. **E.C.S. v. M.C.S.**, 256 A.3d 449, 454 (Pa. Super 2021) (citations omitted).

In Pennsylvania, custody disputes are governed by the Child Custody Act, 23 Pa.C.S.A. §§ 5321-5340. In ordering any form of custody, the court must determine the best interest of the child by considering the sixteen enumerated factors set forth in Section 5328(a)(1)-(16). Similarly, when a party seeks to modify the type of custody award, the trial court must also conduct a Section 5328(a) analysis. **See A.V. v. S.T.**, 87 A.3d 818, 824 n.4 (Pa. Super. 2014); **see also** 23 Pa.C.S.A. § 5338 ("Modification of existing order.").

However, we have also held that a comprehensive Section 5328(a) analysis is not necessary when a party merely seeks to modify a "discrete and narrow issue ancillary to a materially unchallenged custody arrangement." **M.O. v. J.T.R.**, 85 A.3d 1058, 1063 (Pa. Super. 2014). For instance, in **M.O.**, we ruled that the trial court did not err by failing to consider the Section 5328(a) factors to decide whether the father should have to take time off work

to supervise the pre-teen children when exercising his summer custody. **M.O.**, 85 A.3d at 1063. We concluded that the trial court did not have to consider the factors, because the court did not make an **award** of custody – as contemplated by Section 5323(a)[1] – but merely modified a discrete custody-related issue. **See id.**

Our decision in **S.W.D. v. S.A.R.**, 96 A.3d 396 (Pa. Super. 2014) is particularly illustrative. There, like the instant matter, the trial court was tasked with deciding which school the child would attend. **S.W.D.**, 96 A.3d at 398. The court determined that the child would remain at the mother's school of choice, but in reaching its decision the court did not consider the Section 5328(a) factors. **Id.** at 403.

This Court affirmed the decision, holding that the trial court did not have to conduct a Section 5328(a) analysis, because the court merely resolved an ancillary aspect of the parties' custody arrangement, as opposed to altering the form of the custody award:

> While the choice of where a child will attend school is not trivial and certainly is a major life decision, the court's decision here merely resolved an impasse between the parties who shared the legal right to make this decision. Stated another way, the trial court merely arbitrated a dispute between [m]other and [f]ather regarding schooling, instead of granting one of them the right to make that decision. The trial court did not alter the custody regime by allowing either [m]other or [f]ather the sole **right** to make

---

[1] The types of custody awards are: (1) shared physical custody; (2) primary physical custody; (3) partial physical custody; (4) sole physical custody; (5) supervised physical custody; (6) shared legal custody; and (7) sole legal custody. 23 Pa.C.S.A. § 5323(a) ("Award of custody.").

> decisions regarding [the child's] schooling. Here, the trial court did not change the form of legal custody. Rather, it merely acted as an arbiter, and decided [the child's] place of schooling because the parties could not agree on this issue.

*Id.* at 403-404 (emphasis original) (footnote omitted).[2]

Critically, we also explained that "[e]ven where a trial court need not consider and address the Section 5328(a) factors, it still must consider the child's best interest in custody matters." *Id.*

In *S.W.D.*, we observed the trial court did just that; the court determined that the father's choice of school would require the child to change schools, which would not be suited to maintaining the child's consistency. *Id.* at 404. The court also determined that the father's chief concern was the distance from his home to mother's school, and the court disagreed with the father's position that mother's choice of school offered a substandard

---

[2] In reaching our decision in *S.W.D.*, we were careful to note that resolution of an otherwise ancillary matter might still affect a form of custody and thus might necessitate a Section 5328(a) analysis. "For instance, the choice of a child's school may factor into a trial court's decision to award a *form* of custody when the trial court is addressing a request to establish or change legal or physical custody in connection with the choice of school. One parent in a custody dispute may argue that he or she is entitled to primary physical custody because his or her residence has much better schools." *Id.* at 403 (emphasis added). In such situations, the court must consider and apply the Section 5328(a) factors.

Similarly, if the trial court awards a narrow form of sole legal custody – *i.e.*, the right to be the sole educational decisionmaker – then the court must also conduct a comprehensive Section 5328(a) factor analysis. *See id.*; *see also* 23 Pa.C.S.A. § 5322(a) (defining "legal custody" as "the right to make major decisions on behalf of the child, including…educational decisions.").

education. *Id.* We concluded the trial court's reasons were sufficient and supported by the record; and importantly, we also noted that we may not reweigh evidence. *Id.*

Returning to the instant case, the procedural disposition is analogous to that portion of *S.W.D.* articulated above.[3] Here, the parties' resolved the physical custody dispute at the hearing, and neither parent requested sole legal custody to be the exclusive educational decision-maker. In other words, the trial court merely acted as an arbitrator to resolve the impasse between the parties who shared the legal custody right. *See S.W.D.*, 96 A.3d at 403. The trial court decided a "discrete and narrow issue ancillary to a materially unchallenged custody arrangement." *See M.O.*, 85 A.3d at. 1063. Thus, the trial court did not have to conduct a full Section 5328(a) analysis.

On appeal, Father acknowledges the trial court did not have to conduct a comprehensive Section 5328(a) analysis, only that the court had to base its decision on the best interests of the Child. Still, Father claims the court abused its discretion. In his Brief, Father presents his six appellate issues contemporaneously. We address them in the same manner.

Initially, we observe that Father's issues all concern the weight that the trial court afforded the parties' respective testimony and evidence. Father argues the court "failed to consider evidence" and "disregarded evidence" and "ignored evidence." *See* Father's Brief at 6-7 (statement of questions

---

[3] In *S.W.D.*, we reversed the trial court on other grounds.

involved). In making these arguments, Father misunderstands the role of the appellate courts.

It is generally "within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa. Super. 2013). Moreover, the parties cannot dictate the amount of weight the trial court places on the evidence. *A.V.*, 87 A.2d at 820. As noted above, we must defer to the trial court on matters concerning witness credibility and the weight of the evidence. *See S.T.*, 192 A.3d at 1160; *S.W.D.*, 96 A.3d at 404. What we must decide is whether the trial court's decision was manifestly unreasonable in light of the record. *See S.T.*, 192 A.3d at 1160.

Father explains that the most important concern for him was the credentials and opportunities offered by his choice of school. *See* Father's Brief at 23. While we understand Father's desire to give his Child the highest quality of education, Father fails to appreciate that a school's academic advantage was not the trial court's sole concern when deciding what was in the Child's best interests. Here, the court considered not only the schools' educational offerings, but also the Child's need for stability and social development.

Contrary to Father's assertions on appeal, the record reveals the trial court did consider Father's testimony and evidence; the court simply did not afford them as much weight as Mother's testimony and evidence. And upon

our review, we conclude that the trial court's decision to keep the Child at her current school is supported by competent testimony and evidence.

Father's chief argument at trial was that the St. Joan of Arc School offered a far superior education than that of the Palmyra Area School District, and that he was willing to pay for the Child's private school tuition by himself. However, the trial court afforded Father's supporting testimony and evidence limited weight.

While St. Joan of Arc School might be the better school on paper, the court found that the Palmyra Area School District was also highly regarded and that it also offered exceptional educational opportunities. *See* N.T. at 59-60. The court cited Mother's testimony that, when the parties separated, Father strongly desired that Mother move to one of a few districts, including the Palmyra Area School District, because of their educational opportunities. *Id.* at 56. Mother testified that she purposely chose the Palmyra Area School District, because of Father's request. *Id.* Moreover, Mother testified that she also intends to promote STEM education with the Child. *Id.* at 62-64.

The court also afforded considerable weight to Mother's testimony that the Child was doing well academically and socially, and that she should not be uprooted from her environment. *Id.* at 56-59. The Child used to be shy, but she has made friends in her current school and was in a stable educational environment. *Id*. The court was not persuaded by Father's testimony that the Child had been bullied, and that the St. Joan of Arc School would be a better environment. Mother explained that there was only one bullying

- 10 -

incident; it involved a classmate who was picking on other children as well, not just the subject Child. *Id.* at 68. Mother communicated the problem to the school, and the school was "extremely proactive about it." *Id.*

Father also argued that the distance between his home and the Palmyra Area School District was farther than the distance between his home and the St. Joan of Arc School; he explained that the St. Joan of Arc School was located equidistant between the parties' residences. *Id.* at 43. The trial court acknowledged that the distance that the Child had to travel is a relevant consideration, but the court determined that Father failed to present evidence that the Child would endure excessive travel if she remained in Mother's choice of school.

Finally, the trial court afforded weight to Mother's testimony that she had concerns with the St. Joan of Arc School's religious education. *Id.* at 58. She believes there should be a separation between religion and education. *Id.* Neither parent is Catholic. Father downplayed Mother's concern by testifying that he is not religious, and that he was satisfied that the school does not indoctrinate its students. He reasons that it would be good for the Child to be exposed to differing viewpoints so she can make up her own mind later in life. In any event, Father testified that approximately half the of school's student body was non-Catholic, that prayer at school was optional, and that Mass was not mandated. *Id.* at 41. Father contends that the school merely offers religion as an instructional class, like history or any other subject. He concludes that the school's academic advantages should override Mother's

comfort level with the religious component of the school's education. We disagree. How the trial court weighed this testimony was directly within its purview. The trial court did not seem to find Mother's hesitation to be a dispositive factor, but the court did afford her apprehension certain weight.

For the abovementioned reasons, we conclude that the trial court did not err or abuse its discretion, as the court's ultimate decision was not manifestly unreasonable. *See S.T.*, *supra.* The court acted within its discretion when it determined the salient facts and afforded some more weight than others. *See M.J.M.*, *supra.* Its choice of school was properly based upon the best interests of the Child. *See S.W.D.*, *supra.*

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/02/2022