J-S01019-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHELSIE DICIO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RYAN DONALDSON | : | No. 1079 WDA 2022 |

Appeal from the Order Entered August 31, 2022,
in the Court of Common Pleas of Washington County,
Civil Division at No(s): 2021-2060.

BEFORE:   BENDER, P.J.E., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED: MARCH 3, 2023**

Chelsie Dicio (Mother) appeals from the order denying her petition to relocate with her seven-year-old daughter A.D. (the Child) from Washington County, Pennsylvania to Chandlersville, Ohio.  Mother argues the trial court erred and abused its discretion when it failed to give proper weight and consideration to the relocation factors set forth in the Child Custody Act.  ***See*** 23 Pa.C.S.A. § 5337(h)(1)-(10).  After review, we affirm.

The Child was born in March 2015.  Mother and Richard Donaldson (Father) ended their relationship when Child was five years old.  In March 2021, Mother filed a custody complaint, and in June 2021, the parties agreed to an interim custody order.  According to the interim consent order, Mother received primary physical custody subject to Father's partial custody, which

_____

[*] Retired Senior Judge assigned to the Superior Court.

he exercised every Wednesday evening and every other weekend. Eventually, Father's weekend custodial time included Monday mornings before school. Legal custody remained shared. Evidently, the parties' custody case never resulted in a final order, but was subject to periodic reviews. During one such review, the parties allegedly discussed the possibility of Father receiving shared custody.[1]

In March 2022, however, Mother filed a notice of proposed relocation. Mother sought to relocate with the Child to Ohio, where they would live with Mother's fiancé, William Howard; Mother was pregnant with Mr. Howard's child. Mr. Howard lives approximately two hours and fifteen minutes away. Father opposed the relocation, arguing that a relocation would hinder the Child's education and his ability to be a parent.

The trial court held a relocation hearing on August 22, 2022. On August 31, 2022, the trial court denied Mother's petition to relocate and delineated its findings made pursuant to 23 Pa.C.S.A. § 5337(h). Mother timely filed this appeal. She presents one issue for our review:

> Did the trial court commit an abuse of discretion and/or error of law by failing to give proper weight and consideration to the statutory factors used in deciding a relocation request?

Mother's Brief at 8.

---

[1] The reviews were not held on the record.

- 2 -

We begin our discussion by observing our deferential standard of review:

> We review a trial court's determination in a custody case for an abuse of discretion, and our scope of review is broad. Because we cannot make independent factual determinations, we must accept the findings of the trial court that are supported by the evidence. We defer to the trial judge regarding credibility and the weight of the evidence. The trial judge's deductions or inferences from its factual findings, however, do not bind this Court. We may reject the trial court's conclusions only if they involve an error of law or are unreasonable in light of its factual findings.

*C.A.J. v. D.S.M.*, 136 A.3d 504, 506 (Pa. Super. 2016) (citation omitted).

The parties cannot dictate the amount of weight the trial court places on evidence. *See A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014). Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion. *A.V.*, 87 A.3d at 820. The test is whether the evidence of record supports the trial court's conclusions of law. *Id.*

The Child Custody Act contains two sets of factors the courts must consider, depending on the type of action. *See* 23 Pa.C.S.A. § 5328(a)(1)-(16); *see also* 23 Pa.C.S.A. § 5337(h)(1)-(10). Section 5328(a) provides: "In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including [factors 1 through 16.]" *Id.* We have held the court must conduct a Section 5328(a)

analysis when a party seeks to modify the type of custody award. ***See A.V.***, 87 A.3d at 824 n.4; ***see also*** 23 Pa.C.S.A. § 5338 ("Modification of existing order."); ***and see*** 23 Pa.C.S.A. § 5323(a) ("Award of custody."). Although, when a party merely seeks modification of "a discrete custody-related issue" a comprehensive Section 5328(a) analysis is not always necessary. ***See M.O. v. J.T.R.***, 85 A.3d 1058, 1063 (Pa. Super. 2014).

Separately, Section 5337(h) enumerates ten factors a court must consider in determining whether to grant a proposed relocation, again giving weighted consideration to those factors which affect safety. In cases where one party proposed relocation while the other sought custody modification, we have held courts must consider ***both*** sets of custody factors. ***See E.D. v. M.P.***, 33 A.3d 73, 82 (Pa. Super. 2011). Similarly, when a proposed relocation necessarily involves the modification of the parties' custody, courts must consider both sets of factors. ***A.V.***, 87 A.3d at 824-824; ***see also D.K. v. S.P.K.***, 102 A.3d 467, 476-477 (Pa. Super. 2014) (acknowledging several factors directly or implicitly overlap).

This matter only involves the trial court's analysis of the relocation factors under Section 5337(h).[2] The court rendered the following findings:

---

[2] We note that the trial court concluded that it did not have to analyze the Section 5328(a) factors. Mother did not raise the applicability of Section 5328(a) at trial or on appeal. Thus, we do not address whether the proposed relocation necessitated an analysis under Section 5328(a) in addition to the analysis under Section 5337(h).

**(h) Relocation factors.—In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:**

**(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.**

Mother has been the primary caretaker of Child for most of her life and their relationship is strong. Mother takes A.D. to the playground, goes fishing, and does homework with the Child. Mother testified to cooking breakfast, brushing A.D.'s teeth, and getting the Child prepared for school. Mother's fiancé, William Howard, testified to hiking and fishing with the Child.

After Mother and Father separated [in 2020], Father's involvement was sporadic until March 2021. Father testified that the relationship with the Child is loving, and that A.D. has a bond with Father. During the past year, Father has become increasingly involved in A.D.'s life, including attending most of the Child's soccer games, during his custody time and Mother's custody, and going to the majority of doctor appointments. Moreover, Father testified that he plays, rides bikes, paints, and goes to museums with A.D. Father also enjoys teaching A.D. coding, math, and science. Father's fiancée, Kylee Bedanics, testified that she has a good relationship with A.D. Ms. Bedanics reads with A.D. and gives the Child reading challenges during the summer. For these reasons, this factor is neutral.

**(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.**

A.D. attends the Peters Township School District and is entering the second grade. The minor Child is currently enrolled in an Individualized Education Program ("IEP").

Mother testified that the school in Ohio will transfer A.D.'s IEP program and will accommodate the Child.

Father has concerns that a relocation will be detrimental to A.D. because A.D. has always attended the Peters Township School District. Moreover, the Child has been playing soccer with peers for a few years and has extended family in the area. Furthermore, A.D. has a relationship with Paternal Grandmother and Paternal Aunt. Additionally, Mother's extended family, including [Maternal Grandmother, Maternal Step-Grandfather, Maternal Aunt and Uncles] live in the area. For these reasons, this factor weighs against relocation.

**(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.**

The feasibility of preserving the relationship between A.D. and Father would be low. Mother's proposed relocation to Chandlersville, Ohio is approximately two hours and fifteen minutes away from Father's residence. Father currently has custody on Wednesday evenings and every other weekend from Friday till Monday at 7:30 p.m. Mother testified that she believes a strong bond between Father and A.D. is important. Mother acknowledged that it would be more complicated for Father to see the Child if she were to relocate and that Father would not be able to do homework with A.D. on Wednesdays. Furthermore, Mother testified that she does not believe that a parenting relationship could be kept if Father were proposing the same relocation.

Mother also testified that she believes the parties can communicate and maintain a relationship between Father and A.D. However, both parties testified multiple times that the communication between the parties is not good.

Father plays an active role in A.D.'s life. He currently attends most of A.D.'s soccer games and practices and doctor appointments. If the Child were located two and a half hours away, it would be very difficult for Father to continuing attending such meaningful events in the Child's

life. Moreover, relocating would not allow Father to exercise the current Wednesday evening custody time, nor the Monday custody time that he has with A.D. Father has built a loving bond with A.D. that would be greatly diminished should the Child relocate two and a half hours away from Father. Father testified that he desires to work towards a shared custody arrangement with Mother in the future. Mother's proposed relocation would make it very difficult for the parties to exercise 50/50 custody of A.D. For these reasons, this factor heavily weighs against relocation.

**(4) The child's preference, taking into consideration the age and maturity of the child.**

The Child is seven years old and did not testify; therefore, this factor is inapplicable.[3]

**(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.**

Mother testified that she has granted Father additional custody time on multiple occasions when he has requested. Mother also testified that on Mother's Day, she had requested additional time and Father denied the request. Father testified, however, that he only denied the request because Mother was late for an exchange, and he had an event scheduled soon thereafter. Father testified that Mother greets A.D. with gifts at custody exchanges, impeding Father's ability to say goodbye to A.D. Mother testified that she has brought A.D. food because A.D. was hungry.

_____

[3] Neither party requested that the court interview the Child to ascertain her preference, and thus we do not address the court's decision to discount this factor. **But see E.C.S. v. M.C.S.**, 256 A.3d 449 (Pa. Super. 2021) (holding the trial court abused its discretion when it denied a parent's request that the court conduct an *in camera* interview of the children, without first ascertaining whether such an interview would be unnecessarily traumatic or disruptive).

Both parents acknowledged multiple times that [it is] important for the Child to have a strong bond with both parents. Mother testified that A.D. has a good relationship with Father. Father testified that Mother is a good mom. For these reasons, this factor is neutral.

**(6)    Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.**

The relocation would certainly enhance the general quality of life of Mother. Mother's fiancé, William Howard, owns a home in Chandlersville, Ohio where he resides. Mother and Mr. Howard are currently pregnant with their first child together. Mr. Howard is a state trooper for the state of Ohio and has a salary of approximately $100,000. Mr. Howard is active in his small community. Mr. Howard testified that it would be difficult for him to relocate to southwestern Pennsylvania and find employment equivalent to his current employment when factoring in salary, retirement benefits, etc.

Mother currently lives in McMurray, Pennsylvania and is employed as a detective analyst. Mother works remotely from home and has a salary of $40,000. Mother would continue with the same employment, working remotely, if relocation were granted. Mother's extended family, including her mother, brothers, sister, and stepdad all live in Pennsylvania. For these reasons, this factor weighs slightly in favor of relocation.

**(7)    Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.**

A.D. is currently enrolled at the Peters Township School District and has an IEP. Moreover, A.D. has been playing soccer with peers for a few years. Father has also enrolled A.D. in guitar lessons and the Child attends regularly. Mother proposes that the Child attend school in Ohio.

Mother testified that A.D. would have the opportunity to play soccer there as well.

A.D. would not benefit financially by relocating. Mother's fiancé has a current salary of $100,000 and Mother has a current salary of approximately $40,000 totaling approximately $140,000. Father's fiancée has a current salary of $100,000 and Father has a current salary of $60,000, totaling $160,000. Therefore, A.D. would not be enhanced financially. For these reasons, this factor weighs against relocation.

**(8)  The reasons and motivation of each party for seeking or opposing the relocation.**

Mother has legitimate reasons for proposing to relocate with the Child to Ohio. Mother's motivation for seeking relocation is to live with her fiancé, William Howard. Mother's fiancé owns his own home with two acres of land in Chandlersville, Ohio. Mother is currently pregnant with her fiancé's child. Mr. Howard testified that it would be difficult for him to relocate to Washington County, Pennsylvania and find employment equivalent to his current employment. Mother testified that she has not thought about her plans should the court deny her relocation.

Father has legitimate reasons to oppose Mother's proposed relocation. Father opposes the relocation because he wishes to continue the relationship he has built with A.D. over the past year. Father testified that he wishes to seek more custody time with A.D. Moreover, Father believes that a relocation would hinder A.D.'s education and his ability to be a parent to A.D.

**(9)  The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.**

The parties stipulated that there has been no abuse committed by either party.

- 9 -

> **(10) Any other factor affecting the best interest of the child.**
>
> Not applicable.

Order and Opinion, 8/31/22, at 2-7 (not paginated) (style adjusted) (footnote added); *see also* 23 Pa.C.S.A. § 5337(h).

In the argument section of her Brief, Mother cites no relevant authority to support her contention that the court committed an abuse of discretion or error of law. Moreover, she does not exactly claim that the court's decision was without support from the record. Instead, Mother lists all the reasons that the court could have – and should have – ruled for her. For every finding that the court made in Father's favor, Mother cites an example that supports her position.

We do not suggest that Mother's case for relocation was unfounded or unpersuasive. It is just that her reasoning has limited value as an appellate argument. In our role, we do not "re-find facts, re-weigh evidence, and re-assess credibility." *See, e.g., Wilson v. Smyers*, 284 A.3d 509, 520 (Pa. Super. 2022). We cannot make independent factual findings but must defer to the weight that the trial court has chosen to afford a given factor. *C.A.J.*, 136 A.3d at 506. By recounting all the facts that support her position over Father's, Mother seeks to "dictate the amount of weight the court places on evidence," which she cannot do. *See A.V.*, 87 A.3d at 820. In custody matters, the record will often support a result contrary to the trial court's decision. But that does not necessarily mean the court's decision constitutes

an abuse of discretion or is otherwise erroneous. Custody decisions depend upon the weight afforded to a given factor, which in turn, depend upon the weight given to the evidence and testimony. We may not interfere with the court's decision, if its consideration was careful and thorough, and if the record supports the trial court's conclusions. *Id.*

Upon review of the record, we discern no abuse of discretion. The trial court was sympathetic to the fact that Mother was between the proverbial rock and a hard place. The court acknowledged that Mother had been the primary caretaker, that Father's contact with the Child waned during the period between the parties' separation and the custody litigation, and the court noted that the Child stood to receive some benefit from the relocation. However, the court placed value on the fact that the Child has resided in southwestern Pennsylvania. Most critically, the court determined that the benefits of relocation were outweighed by the adverse effect that the relocation would have to the Father-Child relationship, and that such a change was not in the Child's best interests. The critical finding was that it would not be feasible to preserve the same relationship he has with the Child. The court weighed this factor heavily. The weighing of these factors was directly in the trial court's purview.[4]

---

[4] The trial court recognized that the result of its decision will cause Mother and her fiancé logistic difficulties in raising their expected child together. However, merely because one parent is expecting a new child with an individual who lives far away, does not mean that relocation is automatically appropriate for

*(Footnote Continued Next Page)*

Because these findings were supported by the evidentiary record, we do not disturb them. Therefore, we conclude Mother's appellate issue is without merit.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/03/2023

---

the subject child. It may certainly be one factor – perhaps even a dispositive factor if the trial court so decides. But the factors set forth in Section 5337(h) are designed to assess the best interests of the subject Child, not the best interests of the parents. To find otherwise could encourage parents to use a new pregnancy as a means to thwart the relationship with the other parent. We clarify, however, that in this case the court did not find that Mother's motivation for relocation was designed to interfere with Father's relationship. The court simply determined that the sum total of the factors weighed against relocation.