J-A15029-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LORRAINE MERRYMAN, NOW, LORRAINE PATRICK AND ANDREW PATRICK | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : | |
| v. | : | |
| | : | No. 1473 WDA 2021 |
| DANIEL L. DUBROCK | : | |

Appeal from the Order Entered November 9, 2021,
in the Court of Common Pleas of Armstrong County,
Civil Division at No(s):  346 CD 2021.

BEFORE:  BOWES, J., KUNSELMAN, J., and SULLIVAN, J.

MEMORANDUM BY KUNSELMAN, J.:　　　**FILED: September 13, 2022**

Lorraine Patrick (Mother) and Andrew Patrick (Stepfather) appeal from the order of the Court of Common Pleas of Armstrong County, which granted them shared legal custody and primary physical custody of the parties five-year-old daughter, P.N.D. (the Child), subject to the partial physical custody of Daniel Dubrock (Father).  Mother and Stepfather argue that the trial court failed to properly delineate and consider all of the factors enumerated in 23 Pa.C.S.A. § 5328(a).  After careful review, we affirm.

The record discloses the following factual and procedural history:  The parties were able to co-parent without a formal custody order until they could not resolve where the Child should attend elementary school.  As the parties

live thirty minutes apart, and in different districts, the decision of school choice was particularly consequential.

In April 2021, Mother[1] filed a custody complaint seeking primary physical custody. In July, with the school year fast approaching, Mother and Stepfather filed an emergency petition regarding school choice. The court conducted an emergency hearing and issued an interim order. Pursuant to the July 2021 interim order, the Child would attend school in Mother's district. For the remaining weeks of the summer, the court awarded Father physical custody Monday afternoon through Thursday evening. Once the school year started, Father was awarded partial physical custody of the Child for every first, third, and fourth weekend of the month, as well as every Wednesday evening. This order remained in place until the court held the custody hearing on November 5, 2021.

At the close of the November 5, 2021 hearing, counsel for Mother and Stepfather requested that the court essentially adopt the July 2021 interim order for the rest of the school year:

> [W]e believe the temporary custody order has been working out, so for [(*sic*)] changing Wednesdays from 4:00 to 7:00 instead of 5:00 to 8:00 and adding time, with your

---

[1] In May 2021, Mother filed a petition to amend the caption and include the Stepfather. With no objection from either party, the caption was amended to Lorraine Merryman, now Lorraine Patrick and Andrew Patrick v. Daniel Dubrock. No one has challenged Stepfather's participation as a party in this matter.

discretion during the summer.  We would ask that the Court, in a way, affirm the temporary custody order[.]"

N.T. at 70.

On November 9, 2021 the trial court entered a custody order and delineated its 23 Pa. C.S.A. § 5328(a) findings.  The court adopted the interim custody schedule during the school year – *i.e.*, Father received every first, third, and fourth weekend, as well as custody time every Wednesday evening.  But during the summer months, the court slightly increased the amount of custody time that Father received the previous summer.  Instead of three overnights per week, the court awarded Father shared custody on a week-on, week-off basis.

Although the trial court seemingly granted Mother and Stepfather their desired relief, they filed this appeal.[2]  They present the following issue for our review:

> Should the child custody order appealed from be reversed when the statutory factors [listed in 23 Pa. C.S.A. § 5328(a)] do not support the trial court's custody determination, and the trial court's findings of fact and conclusions of law are unsupported by the record?

Mother's and Stepfather's Brief at 11.

---

[2] Notwithstanding counsel's representations at the close of the trial, it appears Mother and Stepfather wanted the court to award them two weekends per month and to eliminate Father's weekday visit – at least according to the proposed order Mother and Stepfather attached to their motion for reconsideration. The trial court denied this request.

As a preliminary matter, we address the procedural defects apparent in this appeal. Mother and Stepfather timely filed a notice of appeal, but they did not contemporaneously file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2). We issued a Rule to Show Cause order directing Mother and Stepfather to file a concise statement, and they complied. Because there have been no allegations of prejudice, we conclude that Mother and Stepfather have preserved their appeal despite their initial noncompliance with Rule 1925. *See In re K.T.E.L.*, 983 A.2d 745, 747 n.1 (Pa. Super. 2009) (appellant's failure to simultaneously filed a Rule 1925(b) statement did not result in waiver of all issues for appeal where the appellant later filed the statement, and there was no allegation of prejudice from the late filing).

However, we also observe that the statement of the question contained in their Brief involved does not exactly correspond with the argument they set forth. According to their presented question, the trial court erred because the court's findings are not supported by either the law or the record. But throughout their Brief, Mother and Stepfather present a slightly different argument – mainly, that the trial court erred by failing to consider a certain statutory factor (Section 5328(a)(15)) and by rendering deficient findings in contravention of Section 5323(d) (reasons for the award).

A brief which fails to comply with the Pennsylvania Rules of Appellate Procedure may result in a quashed or dismissed appeal. *See* Pa.R.A.P. 2101. "[W]e decline to become the appellant's counsel. When…briefs are wholly

inadequate to present specific issues for review, a Court will not consider the merits thereof. ***Branch Banking & Trust v. Gesiorski***, 904 A.2d 939, 942-43 (Pa. Super. 2006) (internal alteration and citation omitted). "No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." Pa.R.A.P. 2116(a).

We decline to find waiver in this instance, as the issues contained in the argument section of the Brief are fairly suggested by the question presented; we do not find the Brief to be "wholly inadequate to present specific issues for review." ***See Gesiorski***, 904 A.2d at 942. Although waiver is not appropriate in this case, we advise counsel to heed the Rules of Appellate Procedure more closely.

Turning to merits of the appeal, we begin our analysis by observing this Court's scope and standard of review for custody matters:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***S.T. v. R.W.***, 192 A.3d 1155, 1160 (Pa. Super. 2018) (citation omitted).

The Child Custody Act provides: "In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including [factors 1 through 16.]" 23 Pa.C.S.A. § 5328(a)(1)-(16). Thereafter, the trial court shall delineate its reasons, either on the record in open court or in a written opinion or order. 23 Pa.C.S.A. § 5323(d).

We have held that a court must delineate its reasons at or near the time of the decision. *C.B. v. J.B.*, 65 A.3d 946, 954 (Pa. Super. 2013). Without the benefit of the court's analysis, a party will be unable to take an effective appeal. "[A] party would have to guess at all the possible issues that might arise from the trial court's ultimate explanation of the bases for its ruling. This could subject the party to waiver for over-inclusiveness or vagueness." *C.B.*, 65 A.3d at 954.

Apart from the timing of the delineation, we have also addressed the substantive quality of the Section 5323(d) delineation:

> In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M. v. M.L.G.*, 63 A.3d 331, 336 (Pa. Super. 2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). *Id*.

*D.Q. v. K.K.*, 241 A.3d 1112, 1118 (Pa. Super. 2020) (quoting *A.V. v. S.T.*, 87 A.3d 818, 822-23 (Pa. Super. 2014)). "It is within the *trial court's purview* as the finder of fact to determine which factors are most salient and

critical in each particular case." ***M.J.M.***, 63 A.3d at 339 (citation omitted) (emphasis added). "The parties cannot dictate the amount of weight the trial court places on evidence." ***A.V.***, 87 A.3d at 820. "Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion." ***Id.*** However, when a trial court fails to consider one of the Section 5328(a) factors, a remand might be necessary to allow the court to supplement its findings. ***See, e.g., E.C.S. v. M.C.S.***, 256 A.3d 449, 460-61 (Pa. Super. 2021).

Instantly, the trial court delineated its reasons for the award contemporaneously with the custody order. The court provided the following analysis under Section 5328(a):

> (1) <u>Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.</u>
>
> Both parties encourage and permit frequent and continuing contact between the Child and the other party. Father testified sometimes he reaches out to FaceTime with the Child and Mother does not respond; however, Mother testified she sometimes is without cell service.
>
> (2) <u>The present and past abuse committed by party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.</u>
>
> There is no history of abuse.
>
> (2.1) <u>The information set forth in section 5329. 1(a) (relating to consideration of child abuse and involvement with protective services).</u>

There was no testimony about any involvement with Children, Youth, and Family Services.

(3) <u>The parental duties performed by each party on behalf of the child.</u>

[Mother and Stepfather] and [Father] perform all parental duties when the Child is in their respective care. When the Child is with Plaintiffs Mother and Stepfather, they ensure the Child maintains her routine for school, works on homework, and cooks for the Child. Mother takes the Child to doctor's appointments and dentist appointment.

Likewise, when the Child is with [] Father, he cooks for the Child and bathes the Child when she is in his care. Also, [] Father's wife, [Stepmother] cooks and bakes with the Child when she is with Father.

(4) <u>The need for stability and continuity in the child's education, family life and community life.</u>

The Child attends Kindergarten at Dayton Elementary with her older brother and rides the bus to school with him every day. She is involved in horseback riding lessons and has attended the Armstrong County Community Action Agency Head Start program for social development.

(5) <u>The availability of extended family.</u>

The Child's older brother lives with Mother and Stepfather, and was recently adopted by Stepfather. Mother's sister lives in New York and Mother plans trips to visit with her Sister and cousins. Stepfather's family is local, including Stepfather's Mother, with whom the Child has a close relationship. Father has half-siblings that the Child occasionally sees. Stepmother has three adult daughters and four grandchildren the Child regularly sees when she is with Father.

(6) <u>The child's sibling relationships.</u>

The Child has an older brother whom she is very close with. The Child and her brother ride the bus together to school and spend a lot of time together. Mother testified the Child refuses to go to sleep without saying goodnight to her brother.

(7) The well- reasoned preference of the child, based on the child's maturity and judgment.

The Court did not speak with the Child as the Child is too young for preference.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

There have been no attempts by [Mother and Stepfather] and [Father] to turn the Child against the other party.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

It is apparent to the Court both [Mother and Stepfather] and [Father] love and care for this Child. There was no evidence presented that either party is more likely to maintain a loving, stable, consistent, and nurturing relationship with the Child adequate for the Child's emotional needs more than the other party.

(10) Which party is more likely to attend to the daily physical, emotional developmental educational and special needs of the child.

[Mother and Stepfather] and [Father] both attend to the Child's daily physical, emotional, development, educational, and special needs of the Child when the Child is in their respective care.

(11) The proximity of the residences of the parties.

Mother and Stepfather reside in Templeton, Pennsylvania. Father resides in Sligo, Pennsylvania. The drive between residences is approximately thirty minutes by car.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

Both parties demonstrated their availability and ability to make appropriate child-care arrangements. Mother typically works 8:00 A.M. until 4:30 P.M. so Stepfather ensures the Child and her older brother get on the school

bus. If needed, Mother and Stepfather arrange for Stepfather's Mother to watch the Child and her older brother. During the summer months, the Child and her older brother attend a home-based daycare while the Plaintiffs are at work.

Father works as a mechanic and has flexible hours which enables him able to pick up the Child from school if needed. Father lives with Stepmother who is available to help with the Child.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

The level of conflict is low between the parties. Stepfather and Father meet halfway for custody drop-offs and pick-ups, which demonstrated to the Court the level of civility between the parties. The Court was impressed by the way the parties work together, and have set aside differences to amicably communicate, all in the best interest of the Child.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

Several years ago, Stepmother was charged with Possession of marijuana and was on probation.

**_(15) The mental and physical condition of a party or member of a party's household._**

**_The Child has not been diagnosed with any mental or physical conditions. The Child has been working on social development through the Agency Head Start Program._**

(16) Any other relevant factor.

No other relevant factor.

\* \* \*

Based on these findings, it is apparent to the Court that both parties love and care for the Child, and have set aside differences and past difficulties to create an amicable relationship for the

> Child. This is truly in the best interest of the Child. Further, it is in the Child's best interest for both parties to continue to have meaningful contact with the Child. Thus, the parties shall share legal custody and Mother and Stepfather shall have primary physical custody during the school year, subject to Father's partial custody. During the summer months when school is not in session it is in the Child's best interest to share the time equally with her two parents.

Memorandum, 11/9/21, at 2-6 (emphasis added).

On appeal, Mother and Stepfather's argument is twofold. First, they argue that the court erred when it failed to consider the mental and physical condition of either party or a member of their respective households under Section 5328(a)(15). *See* Mother and Stepfather's Brief at 22. Second, they allege that because the trial court did not assign weight to the factors, they were unable to discern how the trial court made its decision. *Id.* at 22-23. We discuss each in turn.

Regarding Section 5328(a)(15), Mother testified that she is "very stable mentally and physically" and that she has "a few joint problems but nothing that is out of the normal." *See* N.T. at 22. Stepfather testified that he is "a very mentally and physically strong person due to my experience in the Marine Corp" and that his experience "has prepared me to deal with almost any outcome or incident I have ever come across." *Id.* at 44-45. No testimony was offered about the mental or physical condition of the Child's older brother, who lives with Mother and Stepfather.

Father, representing himself, did not testify about whether he had any mental or physical conditions, nor did he offer any testimony about

Stepmother regarding this factor. The trial court did not ask either Father or Stepmother about their mental or physical conditions; instead, the court asked Father whether **the Child** had any condition that would be relevant to its decision (Father said the Child did not). **Id.** at 54. Notably, counsel for Mother and Stepfather did not cross-examine Father or Stepmother about this factor.

At the conclusion of the hearing, the trial court stated:

> Well, I will tell you, this is the kind of custody case that I like. [The Child] is in no danger in either household. She has a loving family in both homes, both parents are well-qualified and perfectly good parents for [the Child].

N.T. at 71.

The trial court ultimately addressed Section 5328(a)(15) in its delineation of reasons, but only insofar as it related to the Child; the court did not address this factor as it related to the parties or the stepparents.

Upon our review, we discern no error or abuse of discretion. Given the court's statement at the end of the trial, we may infer the trial court considered the mental and physical conditions of Mother and Stepfather but concluded that this factor was largely irrelevant. The court had the opportunity to assess the witnesses firsthand, and it made no additional remarks. **See. S.T.** 192 A.3d at 1160 ("[W]e must defer to the presiding trial judge who viewed and assessed the witnesses first-hand."). Insofar as the court did not consider the mental or physical condition of Father or Stepmother, we note that Mother and Stepfather did not cross-examine Father about this issue. Nor did they allege at the custody hearing that Father or

Stepmother were somehow unfit. And, on appeal, Mother and Stepfather do not cite to any evidence, or present any argument, about why the court's decision was contrary to the Child's best interests based on an alleged physical or mental condition of Father and Stepmother.

Although the trial court's findings under Section 5328(a)(15) are minimalistic, it is evident that the court determined that parties and the stepparents were suitable caregivers. Mother and Stepfather did not allege anything to the contrary, and the trial court properly considered all there was to consider about this factor on the record. We find no reason to remand for a more detailed opinion or additional proceedings under these circumstances.

Next, we consider whether the court's analysis was deficient under Section 5323(d). We reiterate that we may make our own deductions or inferences based on the court's factual findings. *See S.T.*, 192 A.3d at 1160. The ultimate test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. *Id.* Upon review, we conclude that the court's delineation of the factors sufficiently reveals the court's rationale.

The court largely determined that the factors favored the parties equally, which explains why the court awarded shared legal custody and shared physical custody during the summer. Moreover, it was self-evident from the record that the court's award of substantial primary custody during the school year was largely based on two factors: 1) that the Child should attend the elementary school near Mother's home; and 2) that an award of shared physical custody during the school year was simply untenable, given

the distance between the parties' households. **See** 23 Pa.C.S.A. § 5328(a)(4), (11). In other words, it would not be in the Child's best interests to spend hours commuting to and from the parties' homes, during the school week.

As such, the court awarded Mother and Stepfather substantial physical custody during the school year in the district where the Child started kindergarten earlier that fall. Additionally, the Child has a close relationship with her older brother. By awarding the bulk of the school days to Mother and Stepfather, the Child will be able to maintain that close relationship. The court awarded Father three weekends per month and one weekday evening per week during the school year so that the Child could maintain the strong relationship she had with him. This was as close to a shared physical custody arrangement as possible.

We reiterate that a court violates Section 5323(d) when the court's delineation is either untimely or fails to adequately address the relevant factors. **See C.B.**, 65 A.3d at 954; **see also M.J.M.**, 63 A.3d at 336. When that occurs, parties are prevented from understanding the court's rationale in time to decide whether to file an appeal. When such a violation occurs, the remedy is not an outright reversal as Mother and Stepfather suggest, but a remand to allow the court to supplement its analysis. **See E.C.S.**, 256 A.3d at 460-61.

We note that the trial court could have been more explicit in its Section 5328(a) analysis, by revealing more precisely whether a given factor favored either parent, or whether it weighed any of the factors more heavily than the

others. Indeed, had the court's ultimate award been different, then perhaps the court's underlying rationale would not have been so obvious; had that been the case, then a remand may have been necessary to allow the court to further express its reasoning. *See, e.g., Gross v. Gross*, 270 A.3d 1165 (Table), 2021 WL 6110239 (Pa. Super. 2021) (non-precedential decision) (remanding for supplemental findings where the court awarded primary custody to the mother, but where the court's Section 5328(a) analysis seemingly favored the father). Here, however, appellate interference is unwarranted, because the trial court's consideration of the best interest of the Child was careful and thorough. *See A.V.*, 87 A.3d at 820. For these reasons, we disagree with Mother and Stepfather's position that the trial court's analysis prevented them from taking an effective appeal.

In sum, the record supports the trial court's award of primary physical custody to Mother and Stepfather during the school year. This was the relief they sought at the outset of the litigation. To the extent they challenge the Father's partial custody award, we note the trial court has broad discretion in fashioning this award. *See M.J.M.*, 63 A.3d at 339; *see also S.T.*, 192 A.3d at 1160. Nothing indicates Father's partial custody should have been denied, supervised, or otherwise limited. As such, we discern no abuse of discretion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/13/2022