J-A02039-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | | |
|---|---|---|---|
| E.O., JR. | : | IN THE SUPERIOR COURT OF | |
| | : | PENNSYLVANIA | |
| | : | | |
| v. | : | | |
| | : | | |
| | : | | |
| S.H. | : | | |
| | : | | |
| Appellant | : | No. 1118 MDA 2023 | |

Appeal from the Order Entered July 7, 2023
In the Court of Common Pleas of Centre County
Civil Division at No(s): 21-2908

BEFORE: NICHOLS, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:     **FILED: APRIL 8, 2024**

S.H. ("Mother") appeals from the custody order denying her petition for relocation.[1] Following our careful review, we affirm.

In May 2022, Mother filed a Notice of Relocation in this divorce/custody action, in which she sought to relocate with the parties' children, A.O. (then ten years old) and I.O. (then eight years old) (collectively, "the children"). **See generally** Defendant's Notice of Relocation, 5/19/22. Mother asserted the following reasons for relocation: E.O., Jr. ("Father") advised Mother he wanted a divorce, against Mother's wishes, and "Mother does not wish to remain in [c]entral Pennsylvania where [neither] Mother nor Father have any family or strong connections"; Mother and Father have immediate family members in southeastern Pennsylvania; Father has the ability to work

_____

[1] **See generally** 23 Pa.C.S.A. § 5337.

remotely and thus exercise custody in Broomall, Pennsylvania; the children have close bonds with parents' family members in the Broomall area; the relocation would enhance the quality of life for Mother and the children; and Mother would have more opportunity for work in her proposed relocation area. *See id*. at ¶ 11(a)-(f). Father opposed relocation.

The trial court set forth the subsequent factual history as follows:

> [At the time of the custody trial, which took place over four days,] both parties resided in the marital home and, by agreement, shared custodial responsibilities for the minor children on a week-on/week-off basis. Before that, for a period of approximately five months in the winter of 2021 and early spring of 2022, the parties had employed a shared custody "birdnesting" arrangement on a week-on/week-off basis, pursuant to which the party exercising physical custody would stay with the children in the marital home while the other party stayed elsewhere. During Mother's "off" weeks, she would go to Broomall and spend time at her family's home. During Father's "off" weeks, he stayed in a hotel in the State College area. For the summer of 2022, the minor children spent a substantial portion of the time attending summer camps and with Mother in the Broomall area.

Trial Court Opinion, 9/6/23, at 1-2.

During the custody trial, the parties offered testimony and other evidence about the children's connection to the State College area; their connection to, and extended family and financial benefits for Mother in Broomall; and the extent to which the parties were involved in the children's lives and the duration thereof. Mother and her sister-in-law also testified about Father's allegedly excessive use of alcohol, and Father presented his

own testimony in opposition, as well as that of his mother, a colleague, and a

licensed counselor.

The trial court provided the remainder of the factual and procedural

history:

> On consideration of all of the trial evidence, the [c]ourt concluded that relocation to Broomall would not serve the best interests of the children, but that a shared physical custody schedule would be in their best interests if both parents were exercising their custodial periods in the State College area, at least during the academic year while the children are in school. Given the distance between State College and Broomall, Pennsylvania, (approximately 190 miles), and the fact that the children are school-age, a shared physical custody arrangement during the school[-]year would not be feasible if Mother moved to Broomall. As of the conclusion of trial on May 30, however, Mother had not yet decided whether she would move to Broomall if her relocation petition was denied.
>
> At the conclusion of the trial on May 30, [the trial court stated its findings on the record vis-à-vis the section 5337(h) relocation, and section 5328(a) custody, factors, after which] the parties jointly requested that the [c]ourt defer issuing an order for a brief period to permit them the opportunity to explore a possible custody consent order. The [c]ourt granted this request, . . . and the time period was subsequently extended at the request of the parties. The parties' efforts were ultimately unsuccessful. On July 7, 2023, the [c]ourt entered an order denying Mother's request to relocate and entering a [court-ordered] custody arrangement to take effect when the parties no longer share a residence. . . . The order provided alternative custody arrangements depending on Mother's choice in terms of moving to Broomall -- one alternative to take effect if Mother relocated, and the other to take effect if she maintained a "home base" in the State College area for the purpose of exercising shared physical custody. The order gave Mother until August 15, 2023 to communicate her decision to Father; if Mother failed to do so, the order provided that the provisions applicable in the event Mother moved to Broomall would control.

Trial Court Opinion, 9/6/23, at 2. Mother timely appealed, and both she and the trial court complied with Pa.R.A.P. 1925.

Mother raises the following issue for our review:

Did the [t]rial [c]ourt err and abuse its discretion by not adequately weighing and considering numerous factors and denying [Mother's] petition to relocate with the children?

Mother's Brief at 21.

Our standard of review in custody matters is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*E.C.S. v. M.C.S.*, 256 A.3d 449, 457–58 (Pa. Super. 2021) (internal citation omitted). This Court has recently emphasized:

The abuse of discretion standard is highly deferential to the trial court. The evidentiary record of a custody appeal will often support a conclusion different than the one reached by the lower court. *In a custody appeal, the sheer fact that a trial court could have found for the appellant is not a sufficient basis to reverse the court's decision.* Deference must be given to the trial court, who viewed the parties, the witnesses, and the evidence firsthand. It is not the role of this Court to re-find facts, re-weigh evidence, and re-assess credibility.

- 4 -

*Carrero v. Lopez*, 300 A.3d 494, 501 (Pa. Super. 2023) (internal citations and quotations omitted; emphasis added).

Mother, in her sole appellate issue, asserts the trial court abused its discretion in denying her petition to relocate with the children. Section 5337 of the Child Custody Act sets forth the procedures for relocation. Section 5337(b) provides that no relocation shall occur unless every person with custody of the children consents or the court approves the proposed relocation. *See* 23 Pa.C.S.A. § 5337(b). Subsection (c) provides notice requirements and (d) sets forth the manner in which a party may object to a proposed relocation. *See id*. § 5337(c), (d). Additionally, "[t]he party proposing the relocation has the burden of establishing that the relocation will serve the best interest of the child[ren] as shown under the factors set forth in [section 5337(h)]." *Id*. § 5337(i)(1). *See also Carrero*, 300 A.3d at 501.

Section 5337(h) sets forth the relocation factors as follows:

> In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:
>
> (1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.
>
> (2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h).[2]  It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case.  **_See M.J.M. v. M.L.G._**, 63 A.3d 331, 339 (Pa. Super. 2013).[3]

Mother presents ten different arguments in support of her claim that the trial court abused its discretion in denying her petition to relocate.  We address these arguments _seriatim_.

_____

[2] The Child Custody Act contains two sets of factors the courts must consider, depending on the type of action.  **_See_** 23 Pa.C.S.A. § 5328(a)(1)-(16); **_see also_** 23 Pa.C.S.A. § 5337(h).  We have held the court must conduct a section 5328(a) analysis when a party seeks to modify the type of custody award.  **_See A.V. v. S.T._**, 87 A.3d 818, 824 n.4 (Pa. Super. 2014); **_see also_** 23 Pa.C.S.A. § 5338 ("Modification of existing order."); **_and see_** 23 Pa.C.S.A. § 5323(a) ("Award of custody.").

We note that, notwithstanding the fact that the trial court performed a section 5328(a) analysis, **_see_** N.T., 5/30/23, at 63-70, Mother performs no section 5328(a) analysis, makes no section 5328(a) arguments, and limits her appellate issue to whether her petition to relocate should have been granted rather than whether custody should have been modified.  **_Accord_** Trial Court Opinion, 9/6/23, at 2-3 ("The [c]ourt observes that . . . [Mother's issues] relate to assertions of error in regard to the [c]ourt's decision to deny her relocation request, rather than the [c]ourt's rulings with respect to the custodial arrangement _per se_").  Accordingly, we limit our discussion to the section 5337(h) relocation factors.

[3] We note that while **_M.J.M._** is not a relocation case, this Court has repeatedly cited **_M.J.M._** for this proposition in reviewing trial courts' section 5337(h) analyses.  **_See_**, **_e.g._**, **_J.A.Z. v. P.J.J._**, 307 A.3d 689 (Pa. Super. 2023) (unpublished memorandum); **_see also_** Pa.R.A.P. 126(b) (providing that non-precedential decisions of this Court filed after May 1, 2019 may be cited for their persuasive value).

Mother's first two arguments correspond to factor 5337(h)(1), *i.e.*, the "nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life." Mother asserts the trial court failed to consider the "strong familial connections" of Father and Mother in the Broomall area, given neither of them have family in the State College area. *See* Mother's Brief at 31-32. She notes there is voluminous extended family in the Broomall area, including maternal grandparents, uncles, aunts, cousins; and paternal grandparents, uncles, aunts, and cousins. *See id*. at 33. She asserts the children's connections to State College are "tenuous at best." *Id*. at 34. Mother additionally argues the trial court's failure to properly weigh her "commitment to the children early in their lives," since she had been the primary caregiver early on and, prior to August 2021, she coordinated their day-to-day activities, including school, after-care programs, in-service day camps, and sports. *See id*. at 35-36.

The trial court considered this argument and concluded it did not favor Mother:

> Mother contends the [c]ourt failed to adequately weigh the children's connection to their family and extended family in Broomall in comparison to their ostensible "lack of connections" to the State College area and the State College Area School District. As a threshold matter, the [c]ourt disagrees with Mother's characterization of the children's relationship to the State College community and school district. The children have lived in the State College community for nearly all of their lives. Both boys

play sports and take music lessons in the community. They have been involved in theatre and in various other extracurricular activities. They attend church. They have friends with whom they spend time outside of the school day. In addition to testimony from Father, numerous photographs were introduced showing the boys enjoying time with friends and engaged in activities in the community. Although there was some disruption in in-person schooling due to the pandemic, both boys had been attending school in-person in the State College Area School District for approximately two years as of the conclusion of the custody trial. I.O. has attended in-person in the District since the fall of 2021, and A.O. began doing so in the spring of 2021. They are both gifted academically and are in advanced mathematics courses. They have relationships with neighbors, some of whom have acted as caregivers for them in the past. I.O. has an A.D.H.D. diagnosis and sees a provider who comes to the State College area for his visits. In sum, contrary to Mother's characterization, the trial evidence clearly demonstrated that both children are involved and engaged in the local community, and that they have strong connections to the State College community and their school district.

The [c]ourt agrees that the evidence also demonstrated that the children have strong connections with family in the Broomall area. These connections have been maintained, and indeed have flourished, in the years that the children have lived in the State College area. Both Mother and Father have extended family in the Broomall area, and they have historically visited regularly and plan to continue to do so. The [c]ourt concluded the children will be able to continue to maintain these relationships while living in the State College area.

In sum, the [c]ourt concluded the evidence on this point showed that the children's overall wellbeing and stability would best be served by remaining in the State College community and the evidence weighed in favor of denying Mother's relocation request. . . ..

* * * *

Mother complains that the [c]ourt did not adequately weigh her personal commitment to the children as against Father's. This

issue was addressed on-record when the [c]ourt issued its ruling on the final trial day. Although Mother was the primary care giver early on in the children's lives when Mother was on extended maternity leave, the evidence showed that since that time, both parents have been involved in every aspect of the children's lives. The evidence also demonstrated that both parents are equally devoted to the children. The [c]ourt once again disagrees with Mother's characterization of the evidence. There was simply no showing that Mother had or has a greater level of commitment to the children than does Father.

Trial Court Opinion, 9/6/23, at 3-4. In sum, the trial court acknowledged the children's connections to the Broomall area, but also found that the children have connections to State College, and, therefore, this factor did not weigh in favor of relocation. *See*, *e.g.*, N.T., 5/30/23, at 53-56. Additionally, the trial court concluded that Father's involvement in childrearing was equal to Mother's overall. *See*, *e.g.*, *id*. at 53.

Following our review, we conclude the record supports the trial court's findings, which Mother principally contests in this issue, namely, that the children have connections to State College, and that Father was overall equally committed to, and responsible for, childrearing. *See* N.T., 3/20/23, at 250 (Mother conceding that the children had "made some good friends" in State College whom they would be sad to leave); *id*. at 260-62 (Mother testifying that the children participated in community events and attended church in State College); N.T., 4/10/23, at 259 (Mother admitting she had previously described Father as a "wonderful [F]ather," and stating she did not "want to

take the kids away from [him]").[4]  Mindful that "the sheer fact that a trial court could have found for the appellant is not a sufficient basis to reverse the court's decision," ***Carrero***, 300 A.3d at 501, we note that the trial court's findings have support in the record, and decline to re-weigh the evidence.

In her third argument, Mother argues the trial court failed to adequately consider that Father had a "dictatorial style of communication and lack of ability to co-parent with Mother."  Mother's Brief at 37; ***see also*** 5337(h)(10).  Mother asserts Father dictates things such as bedtime routines and when to get up in the morning, and that he has called Mother "childish and manipulative."  ***Id***.  She also asserts that Father was overly quid-pro-quo with accommodating her requests for modifications to the custody schedule.  ***See id***. at 38.

---

[4] ***See also*** N.T., 3/20/23, at 221-22 (Mother testifying that A.O. has a friend in State College named Calvin, and the two are "really bonded," and A.O. has made other friends playing flag football); ***id***. at 223 (Mother explaining that I.O. has a "very good friend in the neighborhood that's in his class," who is one of two of I.O.'s friends in the neighborhood); ***accord*** N.T., 4/10/23, at 179 (Father testifying to the children's friendships in the State College area); ***id***. at 201-02 (Father explaining that the children took weekly piano lessons); ***id***. at 205 (Father testifying that the children "have a good community here and so I don't want to tear them away from that"); N.T., 3/21/23, at 179 (testimony that Father is "typically very involved in every birthday party"); ***id***. at 257 (testimony by Mother that Father, from 2016 through 2021, "regularly [had] the kids on his own in the morning before school because of [Mother's work] meetings," and Father would "get them dressed, groomed, . . . drop them off, *etcetera*); ***id***. at 258 (Mother conceding Father would "[f]or the most part" participate in the children's bedtime routines throughout the marriage).

The trial court considered this issue and determined it did not militate in favor of relocation:

> Mother argues the [c]ourt failed to consider Father's "dictatorial" style of communicating and his purported lack of ability to co-parent with Mother. The evidence does not support Mother's characterization of Father's communication style, or her suggestion that Father is any less able to co-parent than Mother. As to the latter issue, there was ample evidence of situations in which both parents demonstrated excellent co-parenting skills and approached challenging situations with respect for one another and worked effectively to promote the best interests of their children. The evidence also highlighted circumstances in which both parents acted in such a way so as to vindicate their own feelings and/or interests at the expense of one another. The evidence demonstrated that the parties have very different parenting styles, and very different personalities in terms of communicating and processing emotions in challenging situations. The [c]ourt did not agree with Mother's characterization of Father as "dictatorial," and found the evidence to suggest that Mother is manipulative at times and deals with parenting issues on her own terms without regard for Father's thoughts and feelings.

Trial Court Opinion, 9/6/23, at 4.

Following our review, we conclude the record supports the trial court's findings that Mother and Father could effectively coparent. Mother conceded at the trial that she and Father have "been able to work together throughout this past year to make important decisions about the boys." N.T., 3/21/23, at 172. Mother relayed that in the past, she and Father had, for example, in making decisions about which school the children should attend, "we came up with a pro and con list, and we both together decided, you know, what we thought would be best for the kids." N.T., 3/20/23, at 141. Mother likewise

testified that she and Father were able to coordinate the children's extracurriculars. *See id*. at 226. Father also testified that he and Mother worked well together to pursue "educational enrichment" for the children. *See* N.T., 4/10/23, at 165. Mother also testified to an instance of Father proposing a "very reasonable" solution to her request for custody of the children on a specific day. N.T., 3/20/23, at 182. Further, the record belies Mother's description of conflicts involving Father "dictat[ing] things to Mother such as bedtime routines and when to get up in the morning." Mother's Brief at 37. *Cf*. N.T., 5/8/23 (p.m.), at 28 (Father describing "disagreements" with Mother about the children's sleep schedule and him "bring[ing disruptions to their sleep schedule] to her attention"). Given the support in the record for the trial court's finding, and our deferential standard of review, we decline Mother's invitation to re-weigh the evidence. *See Carrero*, 300 A.3d at 501.

Mother, in her fourth argument, asserts that the trial court did not consider the children's educational opportunities in the Broomall area. Specifically, she asserts that "[r]elocation to the Broomall area would allow the children a gifted IEP [individualized education plan] which would no doubt further their academic successes." Mother's Brief at 39; *see also* 23 Pa.C.S.A. § 5337(h)(2).

The trial court considered this issue and concluded it is meritless:

> Mother complains the [c]ourt erred in not adequately considering the children's educational opportunities in the

Broomall area. The evidence did not demonstrate that increased or better educational opportunities exist for the children in the Broomall area versus the State College community. The trial testimony established that the children's needs are addressed in the State College Area School District, where they had attended school for the two years leading up to the conclusion of the custody trial. Both boys are gifted and are enrolled in advanced mathematics classes. Generally, testimony from both parents demonstrated that the State College Area School District has been responsive to the boys' needs and to any concerns raised by the parents. Mother offered testimony about schools she had researched in the Broomall area. There were two private schools she was considering, at least one of which would involve significant expense for the family (approximately $35,000 per child per year). The public schools in the area are near to the home of Mother's parents. Mother indicated the boys would have better opportunities in terms of having a gifted individual education plan ("IEP") if they were to relocate to the Broomall area, but there was no evidence to substantiate her testimony on this point or to suggest the children are at a disadvantage of any kind without an IEP in place. In addition, there was testimony that the boys do not have IEPs in State College because their needs can be met in the regular classroom setting. The evidence further established that the boys are thriving in school.

Trial Court Opinion, 9/6/23, at 4-5.

Our review discloses that the record supports the trial court's conclusion. Mother, when testifying about the educational opportunities available to the children in the Broomall area testified to hypotheticals. *See* N.T., 3/20/23, at 141-43 (Mother discussing the possibility of having the children attend private schools such as the Haverford School, but indicating she was uncertain whether an all-boys school was in their best interest, or Episcopal Academy, but indicating that it did not have enough space in one of the classrooms). Mother, while listing other school options for the children in the Broomall area,

conceded "that both school systems [in State College and Broomall] are good school systems, to my knowledge." *Id*. at 145. Further, Father testified that while the children do not have gifted IEPs in State College, it is because "the school believes it can meet their needs within the classroom without forming [one]," and the children are "doing really fantastic" with their gifted status and, for example, each of them being "bumped up" a grade in math. *Id*. at 207-08. The trial court considered Mother's issue and weighed the evidence, which we are not free to disregard. *See E.C.S.*, 256 A.3d at 457–58.

Mother, in her fifth argument, argues that relocation would confer "innumerable benefits" on Mother; however, she only specifically refers to her father being ill and residing in the Broomall area, and the fact that the parties have "numerous connections" in that area. Mother's Brief at 40; *see also* 23 Pa.C.S.A. § 5337(h)(6).

The trial court considered this claim and determined that while the relocation would have benefitted Mother and her immediate family, this factor was outweighed by the children's interest in "remaining in their community":

> Mother argues the [c]ourt did not adequately consider the positive impact relocation would have on her, specifically on her physical and mental health and well-being. Mother desires to move back to her family home in Broomall to help with her father, who suffered a stroke in July of 2021, and to spend time with him. She also wants to be back in her hometown with extended family and friends. The [c]ourt specifically addressed the positive impact of relocating for Mother, particularly emotionally, both in terms of being able to support her family in caring for her father and in terms of being surrounded by family and old friends during an

> otherwise personally challenging time in her life. The [c]ourt concluded, however, that the benefits to the children in remaining in their community in the State College area were more substantial and should be afforded greater weight. The [c]ourt submits this conclusion did not constitute error or an abuse of discretion.

Trial Court Opinion, 9/6/23, at 5.

Following our review, we cannot say the trial court abused its discretion in affording this factor less weight than others. Preliminarily, for custody matters, "[i]t is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *M.J.M.*, 63 A.3d at 339. The trial court recognized the benefit of relocation to Mother and her immediate family, but, for the reasons discussed above vis-à-vis Mothers first and second appellate issues, the trial court concluded that the children would benefit more from remaining in State College; accordingly, it afforded less weight to this factor, as was its prerogative, and did not result in an abuse of discretion.

Mother, in her sixth argument, claims that the trial court abused its discretion by disbelieving her and her sister-in-law's testimony that Father has "alcohol issues." Mother's Brief at 41. Mother contends the trial court should have believed her evidence rather than crediting testimony from Father, Father's expert, and the children's caregivers. *See id*. Mother argues Father's expert relied on Father's self-reporting and did not confer with Mother. *See id*. at 42. She also suggests that Father hid his alcohol use from the Children's

caregivers. *See id*. Mother maintains she was best-positioned to witness

Father's alcohol use. *See id*. at 42-43.[5]

The trial court considered this issue:

> At trial, Mother presented testimony and photographs in an effort to demonstrate that Father has a substance abuse disorder, or at least that he is a heavy drinker and that his drinking impacts his behavior toward Mother and the children. More specifically, she claimed that, during the marriage, Father would drink excessively and yell at her and sometimes at the children. Mother presented her own testimony and testimony from a sister-in-law to support this claim. In addition, Mother introduced photographs that she took of empty alcoholic beverage containers in the house on various occasions.

> Father denied drinking excessively at any point and denied having a substance use disorder. In addition to his own testimony on this issue, Father presented testimony from his mother and from a colleague -- the department head he works with at Penn State University. These witnesses denied suspecting any alcohol abuse problem on Father's part. In addition, Father submitted to an evaluation by a licensed professional counselor experienced in substance use disorder evaluations and counseling, Walter Morrison [("Mr. Morrison")]. Father introduced a report and testimony from Mr. Morrison at the custody trial. Based on his evaluation of Father, Mr. Morrison concluded Father did not have an alcohol abuse disorder. The [c]ourt also observes that two of the children's caregivers who had exposure to both parents testified. Both caregivers spent a considerable amount of time in the family home, and neither one offered any testimony of substance abuse concerns or behavior that might suggest a problem of this nature in the home.

---

[5] Mother does not assert in her brief that the children are at any risk of abuse by Father owing to his alleged alcohol abuse. *Cf*. 23 Pa.C.S.A. § 5337(h)(9). Therefore, we consider this issue as pertaining to the catchall in section 5337(h)(10).

Considering the testimony and other evidence as a whole, the [c]ourt did not credit Mother's testimony that Father has a drinking problem, or that his consumption of alcohol had negatively impacted the children in any way.

Trial Court Opinion, 9/6/23, at 6.

Mindful of our standard of review, which is deferential to the trial court's credibility determinations, we conclude the record supports the trial court's findings. Initially, we note that Mother testified to her concerns about Father's alcohol consumption. *See* N.T., 3/20/23, at 30-49. Father, however, contradicted Mother's testimony about his alcohol consumption. *See*, *e.g.*, N.T., 4/10/23, at 130-32, 136-42. It was the province of the trial court to make credibility determinations about the conflicting testimony from the parties best situated to give evidence about Father's alcohol use, *i.e.*, Mother and Father, and we cannot invade the province of the trial court, which viewed and assessed the witnesses. *See E.C.S.*, 256 A.3d at 457–58. Accordingly, we cannot say the trial court abused its discretion in crediting Father's testimony over Mother's on this point.

In her seventh argument, Mother argues the trial court abused its discretion by failing to adequately consider Father's motivation for objecting to the relocation, pursuant to section 5337(h)(8). Mother notes the trial court "accepted as genuine Father's belief that staying in the State College community is best for [the children] and his own relationship would suffer if the children would relocate." Mother's Brief at 43. However, Mother argues

that the children's, and Father's, connection to State College is "tenuous at best." ***See id***. at 43-44. She argues that Father's desire to keep the family in State College while his and Mother's families are in Broomall "should at least raise an eyebrow as to intent." ***Id***. at 44. Mother asserts that "[a]ll Father cares about is how everything affects him. Father is not willing to make a small sacrifice, if any at all, so that the children can have much better relationships with many more family members and so that one of the parents can have support in the area where they reside." ***Id***.

The trial court considered this issue and concluded it was meritless:

Mother argues the [c]ourt did not adequately consider Father's motivation for objecting to relocation of the children. Mother's point is unclear at best. As noted in the [c]ourt's on-record ruling on May 30, 2023, the [c]ourt accepted as genuine Father's testimony that he believed staying in the State College community is in the best interests of the children, and that he believed his own relationship with the children would suffer if they relocated to the Broomall area with Mother. Looking at the evidence overall, the [c]ourt agreed that Father's relationship with them would be impaired if the children moved to Broomall with Mother. Father presently enjoys a very close relationship with both boys and, during his custodial weeks especially, is part of their everyday lives. He advocates for their needs, arranges social outings for them, attends their sporting events and other extracurricular activities, plays with them, and engages in their daily routines and provides for them in this respect. As discussed further . . . below, if Mother were move to Broomall with the children, Father's role in their day-to-day lives would be drastically reduced, and he would not be able to be part of their routines and their everyday activities. This would be a loss for Father, and also for the children. On the other hand, Mother's employment is remote, so that she has flexibility in her physical work location. It would be possible for Mother to stay at her parents home during the weeks when Father has custody, and to stay in the State

College area during the weeks when she has custody of the boys. Although this would require that Mother have a "home base" in the State College area, there was no evidence that Mother would not be able to do so for financial or any other reasons.

Trial Court Opinion, 9/6/23, at 6-7.

Following our review, we conclude the record supports the trial court's finding of fact, namely, that Father's objection to the relocation was in good faith and because he desired to remain closely involved in the children's lives, that relocation would impair that, and that relocation would deprive the children of stability. Father testified to his belief that "it's absolutely critical for their development . . . their social and emotional development that they see their parents 50/50 . . .." N.T., 4/10/23, at 124. Father additionally testified that the ten years the children have spent in State College, and in their current residence, provides stability in the sense that they have friends, extracurricular activities, teachers who know them, and a community. *See* N.T., 5/8/23 (a.m.), at 14. The trial court, which heard the evidence, concluded that Father opposed relocation for the reasons stated above, and accepted his testimony as genuine indications of his motivation. *See* N.T., 5/30/23, at 61. Based on our standard of review, which requires deference to the trial court, we decline to disturb the trial court's credibility determinations. *See Carrero*, 300 A.3d at 501 ("Deference must be given to the trial court, who viewed the parties, the witnesses, and the evidence

firsthand. It is not the role of this Court to re-find facts, re-weigh evidence, and re-assess credibility").

Mother, in her eighth argument, argues the trial court abused its discretion by failing to adequately consider, per section 5337(h)(6), the financial benefit to her of relocating. Mother argues that if she relocated, she would have to pay only about a third of her bills, presumably because she would be living with her parents, and she could consider working reduced hours for reduced pay to maintain her current availability for the children. *See* Mother's Brief at 45. Because the trial court's order would require her to maintain two households, she argues, she would have to work more hours and spend less time with the children. *See id*. at 46.

The trial court considered this issue and also determined it did not militate in favor of relocation:

> Mother contends the [c]ourt failed to adequately consider the financial benefit of relocation. The financial benefit to Mother would be on account of her ability to move into her parents' home such that she would not have to pay any rent or mortgage payments for housing. Although Mother presented evidence in an attempt to show she would have greater employment opportunities if she moved to Broomall, the Court found this evidence unpersuasive. The additional opportunities she testified about would also be possible for her living in the State College area or splitting her time between State College and Broomall. Mother has secure employment and is able to work remotely. Mother makes approximately $ 100,000 per year working reduced hours and made $ 150,000 per year when working fulltime at her job; full time employment is available to her, but she chooses to keep a 30 hour per week schedule for lifestyle choice reasons.

Trial Court Opinion, 9/6/23, at 7. The trial court explained at the conclusion of the trial that:

> I certainly understand that being able to live in your parents' home and not have financial debt associated with . . . rent . . . is beneficial financially. . . . I can understand how . . . it might be advantageous financially . . . to make this move and be able to keep a reduced schedule, but I don't find that that weighs in favor of relocation.

N.T., 5/30/23, at 58-59.

Following our review, we conclude the trial court erred with respect to this factor. Section 5337(h)(6) directs the trial court to consider "[w]hether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity." Mother amply testified about the emotional benefit to her being closer to extended family; the trial court additionally accepted as true that the move would financially benefit her, yet it declined to find that the factor militates in favor of relocation. This was error. However, this is not dispositive of whether the court's ruling on the relocation petition was erroneous; rather, we must "view[] as a whole," the trial court's "conclusions and ultimate denial of [the] relocation petition," to ascertain whether it is "unreasonable in light of the court's sustainable findings." **Carrero**, 300 A.3d at 506. Accordingly, we consider Mother's next assertion of error.

Mother asserts in her ninth argument that the trial court failed to adequately consider, pursuant to section 5337(h)(7), the improved quality of

life of the children, if permitted to relocate. *See* Mother's Brief at 46. Mother argues the trial court erroneously equated the children's State College Community connections with their Broomall connections, and she further asserts that she could foster the Broomall connections better if the children were in Broomall. *See id*. at 47. Additionally, Mother argues the trial court did not fully explain why it reasoned that less time spent between Father and the children would be detrimental for the children. *See id*. She also notes that her father has been "near death" for several years and that the children could spend more time with their maternal grandparents rather than with nannies or babysitters. *See id*. at 48-49.

The trial court considered this issue and determined it did not weigh in favor of relocation:

> Mother argues the [c]ourt failed to consider the improved quality of life the children would experience if they relocated. The court believes this argument lacks merit. The [c]ourt concluded that Mother, as the party with the burden of proving relocation is in the best interests of the children, failed to show how the move would enhance the children's lives. Once again, the [c]ourt acknowledges the significance of the children's relationships with extended family members in the Broomall area. The evidence showed, however, that these relationships have been fostered in the past while the family resided in the State College area, and that they would continue to be fostered by both parents in that same fashion. Furthermore, the [c]ourt made clear its conclusion that a shared custodial relationship serves the best interests of the children given the strong bond the children have with each parent, and the significant role each has played in the children's daily lives. The [c]ourt determined that relocating to Broomall would impair the relationship between the children and Father, as he would no longer be able to play a such a significant role in their

daily lives and activities. The [c]ourt concluded this would be detrimental to the children.

Trial Court Opinion, 9/6/23, at 7-8.

Following our review, we conclude the trial court did not abuse its discretion in determining that Mother failed to show that the children would have an improved quality of life in Broomall. Mother's argument largely centers on the fact that the children would have better quality contact with their relatives in Broomall if permitted to relocate; however, the trial court considered this argument, and noted that the children have been able to cultivate a relationship with their Broomall relatives even while located in State College, and that the benefit of moving to Broomall for this purpose would essentially come at the cost of the children maintaining their relationship with Father. The record supports this determination. *See*, *e.g.*, N.T., 3/20/23, at 133-34 (Mother testifying that her older brother and his family make an effort to visit, and that one of the parties' children has especially bonded with her brother's son, and that "we've gone to some of [Mother's nephew's] games, . . . we had the ability to go to [a niece's] 8th grade graduation party"); *id*. at 179-80 (Mother describing family board game nights on Fridays during summer 2022 at her parents' residence with the children); *id*. at 227-28 (Mother testifying about Father's trips to visit his family at various times in fall 2022, some of which would include the children); *id*. at 249 (Mother testifying that the children "spend a lot of time with their

grandparents and cousins on all sides . . ..”); *id*. at 260-61 (Mother testifying that both sets of grandparents participated remotely in I.O.'s first communion); N.T., 3/21/23, at 223-24 (Mother testifying that it was not uncommon for the family to visit extended family: “It was for holidays we were down there, for summer vacations we were down there”); *id*. at 252-29 (Mother testifying to Father's heavy involvement in childrearing over the years); *see also* N.T., 5/30/23, at 54-55 (Father testifying that a move to Broomall would impair his ability to maintain his relationship with the children). Because the record demonstrates that the children have been able to maintain a relationship with extended family in Broomall, and that a move to that region, while increasing the level of engagement with extended family would negatively impact the children's relationship with Father, we cannot say the trial court abused its discretion in concluding this factor did not favor relocation.

In Mother's tenth and final argument, she contends the trial court abused its discretion by failing to adequately consider “the feasibility of preserving the relationship with Father” notwithstanding relocation. *See* Mother's Brief at 49; *see also* 23 Pa.C.S.A. 5337(h)(3). Mother argues that it is not the law that “because Father's involvement in the children's day-to-day lives might reduce, the relocation cannot occur.” Mother's Brief at 49. Mother argues she would include Father in school communications, video calls,

pictures and videos, and do "anything else that would help promote his relationship with the children." *Id*. at 50.

The trial court considered this issue and concluded it was meritless:

> . . . Mother claims the [c]ourt did not adequately consider the feasibility of preserving the relationship with Father if the children relocated. Mother's argument lacks merit. The [c]ourt gave careful consideration to the ability to preserve the relationships between each parent and the children under various possible scenarios in this fairly complicated situation. Father is a full professor at the Pennsylvania State University with teaching and research duties requiring his presence on campus on a year-round basis and in-person. It was clear from the evidence that, given Father's professional responsibilities and job requirements, he would not have the ability to have a consistent, regular shared physical custodial schedule if the children lived in Broomall. As noted above, he would no longer be present in their day-to-day lives or be part of their regular routines. This would be a major change for the children, as well as for Father. The [c]ourt observes that Mother has a far more flexible schedule and would have far greater opportunity to maintain a shared physical custody arrangement, even during the school year, if she chose to do so.

Trial Court Opinion, 9/6/23, at 8.

Based on our review we conclude the trial court's ruling is supported by the record. Father presented evidence that his work schedule would preclude travel to Broomall during the workweek, he cannot spend the summer there due to work commitments and a lack of housing in the region, and finding an equivalent job in that area is unlikely. Accordingly, his relationship with the children would deteriorate. *See* N.T., 3/20/23, at 67; N.T., 4/10/23, at 225-226. Notably, Mother does not contest Father's factual assertions but instead suggests that video calls and other forms of communication would be an

adequate substitute. **See** Mother's Brief at 50. The trial court disagreed that Mother's proposal would suitably ameliorate the impact of relocation on Father's relationship with the children. The court explained that the "frequency of contact and the ability to be a part of the children's daily lives is very important," and that the relationship Father shared with the children would be "really impaired," because Father would be unable to have a "consistent shared custodial schedule in Broomall . . . ." N.T., 5/30/23, at 54-55. We cannot say this was an abuse of discretion. **See C.M.K. v. K.E.M.**, 45 A.3d 417, 426 (Pa. Super. 2012) (affirming an order denying a petition for relocation where, *inter alia*, there was a "proposed move [that] significantly impairs [the f]ather's ability to exercise his custodial rights," where the father had "regular and continued involvement co-parenting" the parties' child).

In sum: following our detailed review of the record, we affirm. Our standard of review is abuse of discretion, and we may not disturb the trial court's credibility determinations. **See E.C.S.**, 256 A.3d at 457–58. Additionally, and crucially, in a custody appeal, the sheer fact that a trial court could have found for the appellant is not a sufficient basis to reverse the court's decision. **See Carrero**, 300 A.3d at 501. Here, many of the assertions of error ultimately rest on the trial court's weight and credibility determinations, including argument two (the nature, quality, and involvement of the parties in childrearing); argument three (whether Father had a

"dictatorial style of communication and lack of ability to co-parent"); argument five (benefit of relocation to Mother's physical and mental health and well-being); argument six (Father's alleged alcohol abuse); and argument seven (Father's motivation for opposing the relocation). The trial court found that argument four (increased educational opportunity for the children in Broomall) did not favor relocation as there was no evidence the children's educational needs were not being met in State College nor was there concrete evidence their educational benefits would increase in Broomall. In arguments one, nine, and ten, the trial court concluded that children had a relationship with extended family that could be maintained even if they did not move to Broomall, but, conversely, their relationship with Father would be impeded if they moved, and that the children indeed had connections to State College. It was within the trial court's discretion to weigh this evidence, for which there was record support, and we therefore cannot say it was an abuse of discretion. *See M.J.M.*, 63 A.3d at 339 (stating that "[i]t is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case"). We note that even if Mother has shown in issue eight that the trial court abused its discretion in failing to credit how financially beneficial the move would be for her pursuant to section 5337(h)(6), this issue corresponds to but one of the section 5337(h) factors. Moreover, we must view the trial court's sustainable findings as a whole in determining whether

the trial court abused its discretion.  **See Carrero**, 300 A.3d at 506.  As there is support in the record for the trial court's conclusions that all of the other factors either did not favor relocation or were neutral, we affirm.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/08/2024