J-S28031-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MEGAN C. WILLIAMS N/K/A MEGAN C. POSEY | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| JERRY L. WILLIAMS | : | No. 561 MDA 2025 |

Appeal from the Order Entered March 25, 2025
In the Court of Common Pleas of Lebanon County Civil Division at
No(s):  2018-2-0636

BEFORE:  BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY KING, J.:                                    **FILED: NOVEMBER 19, 2025**

Appellant, Megan C. Williams n/k/a Megan C. Posey ("Mother"), appeals from the order entered in the Lebanon County Court of Common Pleas, which granted Appellee, Jerry L. Williams ("Father"), partial physical custody of their minor children, S.W. and J.W. (collectively "Children").  We affirm in part and vacate in part.

The relevant facts and procedural history of this case are as follows. Mother and Father were married and had two children, S.W., born in November 2015, and J.W., born in December 2016.  Mother and Father divorced in 2019 and stipulated to a custody order in 2020.  Pursuant to the custody order, the parties shared legal custody, Mother had primary physical custody, and Father had partial physical custody during alternating weekends, holidays and longer custodial periods over the summer months.  In the spring of 2024, Father lost his job in Pennsylvania.  He found a new job in

Tallahassee, Florida and relocated there in June of 2024. On June 5, 2024, Mother filed a petition to modify the custody order based on Father's relocation.

On March 6, 2025, the court held a custody hearing.[1] Father testified that in 2024, he lost his job in Pennsylvania and could not find another job for three months. He subsequently found a job opportunity which required him to relocate to Florida. On June 17, 2024, Father relocated with his wife to Tallahassee, Florida. Father's current work hours vary depending on need but typically, Father works in person from 7:00 a.m. to 5:00 p.m. Father's wife runs her own consulting business and works from their home. Father testified that if Children came to stay with him, his wife could watch Children while he is at work. When asked whether his wife would be working during these hours, Father testified that his wife works for herself and can set her hours to be available to watch Children. Father acknowledged that when he lived in Pennsylvania, his wife did not watch Children when Father had work obligations but noted that the circumstances were different then because his wife was working a different job. Father testified that his mother would also come visit for two weeks to spend time with Children and could watch them while Father is working during that time period.

Father lives in a three-bedroom house which has a bedroom available for each child. Father testified that he lives in a safe neighborhood where

---

[1] Mother was represented by counsel and Father proceeded *pro se*.

Children could freely play outside and he has sports equipment available for them. Father also contacted several summer camps that Children could participate in, but he was waiting until the outcome of the custody hearing before reserving Children a spot in any camps.

Father testified that he reviewed Children's medical records and is aware of their medical concerns. Specifically, J.W. has asthma, which Father has also had his whole life. S.W. was recently diagnosed with a pet dander allergy, resulting in a cough, eczema, and red eyes. Father acknowledged that he has three dogs at his house. Father does not plan to have the dogs stay elsewhere when S.W. is at the house but noted that the dogs are not permitted upstairs where Children's bedrooms are located.

Father testified that he has not seen Children since he moved to Florida. Father was in Pennsylvania from August 9, 2024 to August 11, 2024 to sign closing documents for the sale of his old home. Father testified that he notified Mother about his trip and attempted to schedule time to see Children. Father stated that Mother changed the time that he could see Children four times and he was ultimately unable to see Children on this trip. Father also attempted to arrange for Children to fly to Florida for the Christmas holiday in 2024. Father wanted Children to fly as unaccompanied minors with an airline escort to Florida and back to Pennsylvania. Mother opposed this option and wanted Father to escort Children on each flight, requiring Father to take four plane trips to facilitate the visit. The parties did not reach an agreement, and Father did not see Children during Christmas. Father also testified that he attempted

to schedule time to see Children while he was in town for the instant custody hearing. As of the hearing, the parties had not come to an agreement on when Father could spend time with Children. Father further testified that even when he lived in Pennsylvania, Mother made it difficult for him to spend time with Children during his allotted custodial periods because Children were often scheduled for sports and activities during the same time. Father testified that he believes Children's activities are important but also wants to have quality time with Children during his periods of custodial time.

Father testified that he wants to have an active role in Children's lives and requested that the court modify the custody order to allow Children to spend summer vacation and alternating holidays in Florida with him. Father asked that Children be permitted to fly to Florida and back as unaccompanied minors with an airline escort. Father acknowledged that Children would likely need to take a connecting flight to make the trip. Father stated that he researched the airline escort service for American Airlines and Delta Airlines. Both services will escort Children from one plane to the next for connecting flights and escort Children through the airport at the final destination to meet with a parent.

Mother confirmed that Children had not seen Father since June of 2024. She testified that she has several concerns about Children spending extended periods of time in Florida. Mother stated that when Father was living in Pennsylvania, she was Father's backup childcare provider when Father had scheduling conflicts during his custodial time. She was concerned that Father

would not have good backup childcare plan in place if similar scheduling conflicts arose while Children were in Florida. Mother also expressed concern that Children would not have enough activities to keep them occupied at Father's house. Children are involved in several extracurricular activities. S.W. plays soccer, takes dance lessons, and is a Girl Scout. J.W. plays soccer and hockey. Children love participating in these activities and their schedules are often busy due to practices, lessons, and games. Mother testified that she agreed to Father spending time with Children, but Father would often decline his custodial time if Children had scheduled activities during the same time.

Mother also had concerns that Father would not be able to properly manage Children's health concerns. Mother stated that she is worried Father does not have enough familiarity with J.W.'s asthma symptoms to address any concerns that might arise. Mother testified that she had to recently rehome her dog due to S.W.'s allergy. Additionally, Mother is uncomfortable with Children traveling as unaccompanied minors from Pennsylvania to Florida. Mother expressed concern that the airline escort would only accompany Children from gate to gate for connecting flights and Children would have to wait at the gate on their own.

After both parties testified, Mother's counsel inquired of the court, "I wasn't certain whether your Honor wanted to speak to the children today." (N.T. Custody Hearing, 3/6/25, at 63). The court responded that it did not intend to speak with Children in making its determination. Neither party objected to the court's decision. Additionally, the court also informed the

parties that it would not make a final decision until it reviewed the entire Our Family Wizard[2] record of text communication between Mother and Father. The court asked the parties to provide a copy of the full record to the court to review. Again, neither party objected to the court's request. The entire record of conversation between Mother and Father on My Family Wizard was subsequently submitted and reviewed by the court.

On March 25, 2025, the court issued a modified custody order, which maintained shared legal custody and granted primary physical custody to Mother. The order granted Father two months of physical custody in Florida during Children's summer vacation from school. The order also granted Mother one long weekend of physical custody in Florida during this time. Additionally, the court granted Father physical custody of Children in Florida on alternating Christmas holidays. The order further directed Father to pay for any flights for Children to visit Florida and granted Father discretion on whether Children could fly as unaccompanied minors with the use of an airline escort service. Additionally, in paragraph 11 of the order, the court suspended Father's child support obligation for the two months that Children are in Florida. The order further granted Father two long weekends of physical custody in Pennsylvania during the fall and spring. The order directed Father to choose the dates for his visits and provide early notice to Mother. The order

---

[2] Mother and Father confirmed at the hearing that they exclusively communicate through the My Family Wizard messaging service. Both parties referenced conversations and disagreements that they had on the messaging service throughout their testimony.

explained that during these visits, Children were permitted to miss school on the Friday of each visit, resulting in two days of absence for the year.

On April 24, 2025, Mother filed a timely notice of appeal and a contemporaneous concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i).[3]

Mother raises the following issues for our review:

1. The court erred when it refused to speak with the minor children in accordance with 23 Pa.C.S.A. § 5328(7).

2. The court erred when it required the parties to submit their whole text message history without requiring the exhibits to be authenticated, testified to or allow their contents and/or testimony regarding the contents to be subject to cross-examination.

3. The court erred when it reviewed the text messages between the parties, as it contained messages that were exchanged between the parties after the date of the trial when the evidence was closed.

4. Further, the court erred when it ordered the text messages to be admitted into evidence without the opposing party being able to review the evidence prior to

_____

[3] Mother's notice of appeal purported to appeal from the March 25, 2025 custody order and a subsequent order entered on April 15, 2025. The April 15, 2025 order directs the Lebanon County Domestic Relations Office to accept responsibility for handling all matters pertaining to the parties' child support dispute. The parties' child support matter was initially docketed in Dauphin County, which transferred the matter to Lebanon County after the entry of the March 25, 2025 custody order. On May 22, 2025, this Court issued a rule to show cause concerning the appealability of the April 15, 2025 order. Mother filed a response on June 2, 2025, indicating that she only wished to pursue the appeal from the March 25, 2025 custody order. Pursuant to Mother's response, this Court quashed the portion of Mother's appeal from the April 15, 2025 order. Thus, the current appeal lies only from the March 25, 2025 custody order.

it being admitted into the record.

5. The court's award of 2 months of custodial time during the summer is not in the children's best interests as it does not take into account the medical and health needs of the children, the ability for the children to participate in extracurricular activities or provide the children any vacation time with Mother over the summer vacation.

6. The court's custody order is not in the best interests of the children, as it allows them to miss school at predetermined times without considering what would happen if the school day is a mandatory educational day, or if it would negatively affect the minor children to miss those school days; further, there is no allowance in the order to accommodate any shifting of these days in the event that it is a mandatory school day.

7. The court erred when it ruled that the minor children can fly alone and left it up to Father to determine whether that was appropriate, without allowing Mother to have input into this decision.

8. The [c]ourt erred when it *sua sponte* modified child support in support docket 1458 DR 18 as part of its ruling in the custody matter, without a proper analysis of the laws governing child support and without providing the parties with an opportunity to argue or present evidence on this issue.

(Mother's Brief at 16-17) (reordered for purposes of disposition).[4]

Mother's first four issues concern the court's refusal to speak with Children and the court's review of the entire record of messages exchanged between the parties on the My Family Wizard messaging service prior to

---

[4] Mother listed 11 issues in the statement of questions involved section of her brief. Nevertheless, Mother indicated in the brief that she is withdrawing three issues on appeal. As such, we do not list them here.

entering its custody order. Preliminarily, we reiterate that at the custody hearing, Mother's counsel asked the court whether it intended to speak with Children and the court indicated that it did not. Mother did not object or in any way note that she wanted the court to speak with Children. Likewise, when the court explained on the record why it wanted to review the entire record of the My Family Wizard messages between the parties, Mother did not lodge an objection to the court's directive for the parties to submit the entire record of messages. Further, Mother did not seek any restriction or procedure on how the messages should be submitted to the court. As such, Mother has waived her first four issues on appeal. *See Coulter v. Ramsden*, 94 A.3d 1080, 1089 (Pa.Super. 2014), *appeal denied,* 631 Pa. 719, 110 A.3d 998 (2014) (stating: "[O]nly claims properly presented in the [trial] court are preserved for appeal"); Pa.R.A.P. 302(a) (stating issues not raised in trial court cannot be raised for first time on appeal).

In her fifth, sixth and seventh issues combined, Mother argues that various aspects of the custody order are not in Children's best interests. Specifically, Mother contends that granting Father two months of physical custody of Children over the summer months will result in Children missing part of their extracurricular activities, which are very important to Children. Mother claims that the court failed to provide Mother with a significant period of custodial time during the summer months so that she could vacation with Children. Mother also asserts that the court failed to properly consider that

S.W.'s allergies would be exacerbated by spending two months in Father's residence with three dogs. Further, Mother argues that the court erred in granting Father sole discretion to decide whether Children can fly as unaccompanied minors because Mother believes that it is not safe for Children to fly unaccompanied. Additionally, Mother claims that the court abused its discretion by directing that Children miss two days of school without providing any flexibility to account for mandatory school events. Mother concludes that the court abused its discretion in imposing the terms of the modified custody order and we should vacate the order on these grounds. We disagree.

The following principles apply to our review of a custody order:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*E.C.S. v. M.C.S.*, 256 A.3d 449, 457-58 (Pa.Super. 2021) (quoting *S.T. v. R.W.*, 192 A.3d 1155, 1160 (Pa.Super. 2018)).

> [I]t is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given due deference to the trial court's weight and credibility

determinations,' the trial court erred or abused its discretion in awarding custody to the prevailing party.

*E.B. v. D.B.*, 209 A.3d 451, 468 (Pa.Super. 2019) (quoting *King v. King*, 889 A.2d 630, 632 (Pa.Super. 2005)).

With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child.

*M.J.M. v. M.L.G.*, 63 A.3d 331, 334 (Pa.Super. 2013), *appeal denied*, 620 Pa. 710, 68 A.3d 909 (2013) (quoting *J.R.M. v. J.E.A.*, 33 A.3d 647, 650 (Pa.Super. 2011)).

The parties cannot dictate the amount of weight the trial court places on the evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa.Super. 2009) (quoting *S.M. v. J.M.*, 811 A.2d 621, 623 (Pa.Super. 2002)).

The Child Custody Act provides:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving substantial weighted consideration to the factors specified under paragraphs (1), (2), (2.1) and (2.2) which affect the safety of the child, including the following:

(1) Which party is more likely to ensure the safety of the child.

- 11 -

(2)     The present and past abuse committed by a party or member of the party's household, which may include past or current protection from abuse or sexual violence protection orders where there has been a finding of abuse.

(2.1)     The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(2.2)     Violent or assaultive behavior committed by a party.

(2.3)     Which party is more likely to encourage and permit frequent and continuing contact between the child and another party if contact is consistent with the safety needs of the child.

(3)     The parental duties performed by each party on behalf of the child.

(4)     The need for stability and continuity in the child's education, family life and community life, except if changes are necessary to protect the safety of the child or a party.

(5)     The availability of extended family.

(6)     The child's sibling relationships.

(7)     The well-reasoned preference of the child, based on the child's developmental stage, maturity and judgment.

(8)     The attempts of a party to turn the child against the other party, except in cases of abuse where reasonable safety measures are necessary to protect the safety of the child.  A party's reasonable concerns for the safety of the child and the party's reasonable efforts to protect the child shall not be considered attempts to turn the child against the other party.  A child's deficient or negative relationship with a party shall not be presumed to be caused by the other party.

- 12 -

(9)     Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10)     Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11)     The proximity of the residences of the parties.

(12)     Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13)     The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child or self from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14)     The history of drug or alcohol abuse of a party or member of a party's household.

(15)     The mental and physical condition of a party or member of a party's household.

(16)     Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

Instantly, the court considered and weighed all of the custody factors and determined that it was important for Father to have a significant period of custodial time with Children in Florida to maintain their bond. The court acknowledged the significant role Mother plays in Children's upbringing and granted her primary physical custody of Children for the majority of the year. Because Father lives in Florida, he is only able to have small periods of custodial time with Children during the months that Children are in school. As

- 13 -

such, the court determined that it was important for Children to spend a significant period of time with Father during the summer months. The court acknowledged the noteworthy role that extracurricular activities play in Children's lives but ultimately determined that Children's activities do not take precedence over the need for Children to have a strong bond with Father. The custody order also directs Father to engage Children in activities they enjoy while they are in Florida. Further, although the custody order does not provide Mother with a significant period of time with Children during the summer months for vacation, the court granted Mother almost exclusive custody of Children for ten months of the year, including most weekends and alternating holidays.

Regarding S.W.'s allergies, the record reveals that Father was up to date on S.W.'s medical records and aware of S.W.'s recent allergy diagnosis. Although Father testified that he plans to keep his dogs at his house when S.W. visits, Father indicated that he could prevent the dogs from going to the portion of the house where Children's bedrooms are located. As of the hearing, S.W. had not yet visited Father in Florida for the parties to determine whether Father's proposed solution would be effective. Further, nothing in the record indicates that Father would not take appropriate steps to prioritize S.W.'s health if the need should arise.

Additionally, the custody order directs Father to pay for all of Children's airfare for their visits to Florida. In order for this directive to be financially

reasonable for Father, the court granted Father discretion to determine whether Children could fly as unaccompanied minors with an airline escort service. The court heard testimony from both parties about the availability of flights and the procedures of airline escort services. The court ultimately concluded that Mother's concerns were overblown, and the airline escort services were specifically designed to transport unaccompanied children safely to their destination.

Regarding Mother's concern that the custody order directs Children to miss two days of school when Father visits, the custody order provides sufficient flexibility to address Mother's concern. The order provides Father flexibility to pick one long weekend in the spring and one long weekend in the fall to visit Children in Pennsylvania. Father can choose a weekend that does not conflict with any mandatory school obligations. The order further directs Father to provide Mother with advanced notice of his choice of weekends. As such, if Father unknowingly picks a weekend that conflicts with any mandatory school obligations, Mother has sufficient time to inform Father of the conflict.

On this record, we cannot say the court abused its discretion in imposing these provisions of the modified custody order. ***See E.C.S., supra***. The court carefully considered and balanced Children's need for stability and continuity with their day-to-day lives in Pennsylvania and their need to have a strong bond with Father. Mother essentially asks this Court to assign more weight to certain factors that she deems more important; we decline her invitation to

do so. *See R.M.G., Jr., supra*. Because we cannot say the court abused its discretion, Mother is not entitled to relief on her fifth, sixth and seventh issues. *See E.C.S., supra*.

In her eighth and final issue, Mother asserts that the court erroneously modified Father's child support obligation in its custody order when neither party sought a modification of child support. Mother argues that the court modified the child support obligation without providing notice or an opportunity to be heard on the issue. Further, Mother contends that the court's modification of child support is not supported by any evidence as neither party presented evidence or argument regarding their financial obligations at the custody hearing. Mother concludes that the modification of child support was erroneous, and this Court should vacate this provision in the custody order. We agree.

Our standard of review when evaluating a child support order is as follows:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order.

*Summers v. Summers*, 35 A.3d 786, 788 (Pa.Super. 2012) (citation omitted).

"[A]n award of support, once in effect, may be modified **via** petition at any time, provided that the petitioning party demonstrates a material and

substantial change in their circumstances warranting a modification." **Id.** (citation omitted) (emphasis in original). The Pennsylvania Rules of Civil Procedure further provide:

> Pursuant to a petition for modification, the trier-of-fact may modify or terminate the existing support order in any appropriate manner based on the evidence presented without regard to which party filed the petition for modification. If the trier-of-fact finds that there has been a material and substantial change in circumstances, the order may be increased or decreased based on the parties' respective monthly net incomes, consistent with the support guidelines, existing law, and Pa.R.C.P. No. 1910.18(d), and the party's custodial time with the child at the time the modification petition is heard.

Pa.R.C.P. 1910.19(c).

In discussing the required due process for a child support modification, this Court has previously stated:

> Due process requires that a party who will be adversely affected by a court order must receive notice and a right to be heard in an appropriate setting. Notice, in our adversarial process, ensures that each party is provided adequate opportunity to prepare and thereafter properly advocate its position, ultimately exposing all relevant factors from which the finder of fact may make an informed judgment.

**Brickus v. Dent**, 5 A.3d 1281, 1286 (Pa.Super. 2010) (citations omitted).

"[A] modification of an existing [support] order is justified … only when it is supported by clear and positive evidence **after a hearing on the merits**." **Com. ex rel. McClelland v. McClelland**, 450 A.2d 58, 61 (Pa.Super. 1982) (citation omitted) (emphasis in original). Additionally, "a modification may only be based **upon facts appearing in the record** which show [a]

- 17 -

permanent change in circumstances as to require … modification." **_Id._** (emphasis in original).

Here, neither party filed a petition to modify child support. Likewise, neither party was on notice that modification of the child support order was an issue at the custody hearing. As a result, neither party presented any evidence or argument regarding their financial circumstances and/or the anticipated change in their respective financial burdens as a result of any changes in the custody order. In paragraph 11 of the custody order, the court explained its decision to suspend Father's child support obligation for two months based on Father's increased financial burden in paying for flights and having extended custodial periods with Children. Nevertheless, there is no evidence in the record about the anticipated cost of flights. Additionally, there is no evidence regarding the relative increase in costs to Father as a result of his two months of continuous custody of Children. While we recognize the court's concerns that custody modification may implicate the parties' child support obligations, we are aware of no authority permitting the court to modify the child support order _sua sponte_ without holding a hearing to fully consider how the modification affects the parties' respective financial obligations consistent with the support guidelines. **_See_** Pa.R.C.P. 1910.19(c). As such, we conclude that the court violated Mother's due process rights by modifying Father's child support obligations without providing notice or conducting a hearing. **_See Brickus, supra_**; **_Com. ex rel. McClelland,_**

*supra*. Accordingly, we vacate paragraph 11 of the custody order, which partially suspends Father's child support obligation, and affirm the remainder of the custody order.

Order affirmed in part and vacated in part.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/19/2025